**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ISKANDER RASULEV, | |
| Plaintiff, | Case No.: 16 Civ. 1993 |
| v. | **FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT** |
| GOOD CARE AGENCY, INC., | |
| Defendant. | Jury Trial Demanded |

Plaintiff Iskander Rasulev ("Plaintiff" or "Rasulev") by his attorneys Wittels Law, P.C. brings this action individually and on behalf of a class of persons defined below, against Defendant Good Care Agency, Inc. ("Defendant," "Good Care Agency" or the "Company") and alleges the following with knowledge as to his own acts, and upon information and belief as to all other acts:

### SUMMARY OF THIS COLLECTIVE AND CLASS ACTION
### TO RECOVER UNPAID WAGES AND OVERTIME

1. This suit seeks to remedy the illegal labor practices of Defendant Good Care Agency, a home health care company that places medical and non-medical personnel with patients who need medical and other home care assistance. Plaintiff and the Class are hard-working home health aides, nurses and other health care employees (collectively, "home care workers") employed by Good Care Agency who dedicate themselves to attending to these patients' needs.

2. Upon information and belief, Good Care Agency is a fast-growing company, now servicing over 600 customers and employing more than 750 home care workers throughout New York.

- 1 -

3.      Defendant Good Care Agency's rapid growth and success is attributable to the dedicated service of its home care workers.  Nevertheless, although Plaintiff Mr. Rasulev and other members of the Class typically work more than 40 hours per week to service Good Care Agency's expanding patient base and have helped Defendant accomplish its impressive growth, Good Care Agency fails to pay them the overtime compensation they are legally owed.

4.      To make matter's worse, Defendant holds on to the money earned by its home care workers for longer than is allowed under the law.  Instead, through its uniform practice of paying employees later than the law allows, Good Care Agency further deprives its employees of a fair day's wage for a fair day's work.

5.      Defendant's unlawful labor practices undoubtedly benefit its bottom line, but such benefits are in violation of New York State Labor Law and its implementing regulations ("NYLL" or "N.Y. Labor Law"), the Home Care Worker Wage Parity law set forth in New York Public Health Law ("N.Y. Public Health Law" or "NYPHL") § 3614-c ("Wage Parity Law"), and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and its supporting regulations.

6.      The home care industry has grown dramatically over the past thirty years as more individuals stay at home rather than seek care in nursing homes.  Today, there approximately 2 million home care workers nationwide supporting their clients' independence.  Yet despite the industry's growth, home care workers remain among the lowest paid in the service industry.  The average wage for a home care worker in the United States—overwhelmingly immigrant women and women of color—is less than $20,000 a year.  Further, the lack of basic employment protections, including compliance with state and federal wage and hour laws, result in an approximately 50% turnover rate in the home care industry and leaves those who do stay in the

industry unable to take care of their own families.

7.    Plaintiff Mr. Rasulev brings this action on behalf of himself and all similarly situated employees both as a class action under Rule 23 of the Federal Rules of Civil Procedure, and as a collective action under the FLSA, 29 U.S.C. § 216(b).

8.    Only by joining together in a class and collective action can Defendant's employees remedy Good Care Agency's ongoing wrongdoing.  Because the monetary damages suffered by each employee are small compared to the much higher cost a single employee would incur in trying to challenge Good Care Agency's unlawful pay practices, it makes no financial sense for an individual employee to bring her or his own lawsuit.  Further, many employees don't even realize they are victims of Defendant's wage and hour violations.

9.    With this class action, Plaintiff and the Class seek to level the playing field and ensure that companies like Good Care Agency engage in fair and upright business practices. Plaintiff therefore seeks equitable relief in addition to monetary damages.  Because Defendant's unlawful conduct is ongoing, Plaintiff also seeks injunctive relief to ensure that Defendant's unlawful wage policies and practices do not continue.  Plaintiff also asks that the Court declare Defendant's wage and hour practices impermissible, require that Defendant return all misappropriated monies, and compensate Plaintiff and the Class for all damages suffered as a result of Defendant's unlawful conduct.

## **PARTIES**

10.    At all times relevant to this action, Plaintiff Iskander Rasulev resided in Brooklyn and Queens, New York.  Plaintiff Rasulev was employed by Good Care Agency from August 22, 2015 until November 9, 2015.

11.    At all relevant times, Plaintiff Mr. Rasulev worked as a home health aide who

regularly worked more than 40 hours per week.

12.    Mr. Rasulev's duties as a home care worker included making and changing beds; dusting and vacuuming, cleaning kitchens, bedrooms, and bathrooms including putting items away; washing and putting away dishes; running errands; carrying bags; and doing laundry. Mr. Rasulev spent the majority of his working time as a home care worker performing this physical labor. Good Care Agency's other home care workers do these same tasks and also spend the majority of their time performing physical labor.

13.    Defendant Good Care Agency is a New York corporation with an office in Brooklyn, New York. Good Care Agency is primarily in the business of placing home health aides and other health care professionals including nurses, physical therapists, occupational therapists, and speech therapists at the homes of patients with medical and personal care needs.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 and 29 U.S.C. § 216(b) because Plaintiff seeks relief under federal law, specifically the FLSA, 29 U.S.C. § 201 *et seq.*

15.    This court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332 (the "Class Action Fairness Act"). This action meets the prerequisites of the Class Action Fairness Act, because the aggregate claims of the Class exceed the sum or value of $5,000,000.00, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Defendant.

16.    This Court also possesses supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims arise out of the same case or controversy. Plaintiff's state law claims do not involve new or novel aspects of state law nor do

they predominate over federal issues.

17.    This Court has personal jurisdiction over Defendant because it is a New York corporation.

18.    Venue is proper in this district under 28 USC § 1391 because Defendant resides in the Eastern District of New York as it is subject to this Court's personal jurisdiction and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

19.    Upon information and belief, Good Care Agency was established in 2012 and has seen robust annual growth since then. Upon information and belief, the Company's yearly revenues have been well in excess of $500,000 from 2012 to the present.

20.    Good Care Agency has employees who handle goods and/or materials that have been moved in or produced in interstate commerce. These include medical and non-medical devices and materials produced and/or moved in interstate commerce.

21.    On information and belief, Good Care Agency's employees also engage in interstate commerce by billing insurance companies using instrumentalities of interstate commerce such as telephones, the Internet, and interstate banking systems.

### A.    Failure to Pay Overtime at the Proper Rate

22.    During his tenure with Good Care Agency, Plaintiff Rasulev worked long hours, averaging 60 hours per week. The only weeks he worked less time were his first week (August 22, 2015 – August 28, 2015), during which he worked 48 hours, and his last week (November 7, 2015 – November 13, 2015), during which he worked 6 hours. The Company's typical pay process was to pay Mr. Rasulev for 7-day pay periods beginning on Saturday and ending on

Friday.

23.     Plaintiff Rasulev's regular rate of pay from August 25, 2015 through October 23, 2015 was $10.00 per hour.  Under the applicable NYLL and FLSA regulations, prior to October 13, 2015 Good Care Agency was thus required to pay Plaintiff Rasulev and all other members of the class $13.13 per hour, or one and a half times the basic minimum hourly rate, for each overtime hour worked in excess of 40 hours during this period.  Starting on October 13, 2015 and as a result of a change in federal regulations, Good Care Agency was required to pay Plaintiff Rasulev and all other members of the class $15 per hour, or one and a half times their regular hourly rate, for each overtime hour worked in excess of 40 hours during this period.

24.     At all relevant times, however, Good Care Agency failed to pay Plaintiff the proper overtime rate.  For example, from August 25, 2015 through October 23, 2015, Good Care Agency paid Rasulev only $12.00 per overtime hour, which is even less than one and a half times the basic minimum hourly rate ($1.5 \times \$8.75$ at the time = $13.13) required by 12 NYCRR § 142-2.2.  It is also less than one and a half times the regular hourly rate required by the FLSA under 29 CFR Part 552, effective as of October 13, 2015.

25.     Plaintiff Rasulev's regular rate of pay from on or about October 24, 2015 through November 9, 2015 was $11.00 per hour.  Under the applicable NYLL and FLSA regulations, Good Care Agency was thus required to pay Plaintiff Rasulev and all other members of the class $16.50, or one and a half times their regular hourly rate, for each overtime hour worked in excess of 40 hours during this period.

26.     However, from October 24, 2015 through November 3, 2015, Good Care Agency paid Mr. Rasulev only $13.13 per overtime hour, which is less than one and a half times the regular hourly rate required by the FLSA under 29 CFR Part 552 effective as of October 13,

2015.

27.    The overtime violations detailed above are demonstrated on payroll account records both in Plaintiff's and Defendant's possession.

28.    Defendant's failure to pay Plaintiff proper overtime compensation required by the FLSA and NYLL was willful.

29.    Defendant's unlawful conduct occurred pursuant to a corporate policy and/or practice of minimizing labor costs by denying Plaintiff and the Class compensation in violation of the FLSA and NYLL.

**B.    Denial of "Spread of Hours" Pay for Time Worked In Excess of 10 Hours**

30.    Defendant is required by New York law to pay Plaintiff and the Class an extra hour's pay for split shifts or any time worked in excess of the 10-hour shift pursuant to 12 N.Y.C.R.R. § 142-2.4.

31.    Plaintiff Rasulev and the Class regularly worked more than ten hours per day.

32.    For example, Plaintiff Rasulev worked 12 hours without receiving the requisite spread of hours pay on each of the following days in the first half of September 2015: September 1, September 2, September 4, September 7, September 8, September 9, September 11, September 14, September 15, and September 16.

33.    Defendant fails to provide "spread of hours" pay to its employees when they work more than ten hours per day.

**C.    Wage Theft Prevention Act Violations**

34.    Defendant failed to provide Plaintiff and the Class with accurate wage statements, which is required by NYLL § 193(3).

35.    Defendant also failed to furnish Plaintiff and the Class with an accurate annual

notice as required by NYLL § 193(1).

36.    Defendant failed to keep accurate or adequate records of hours worked by Plaintiff and the Class as required by the FLSA and the NYLL.

### D.    Failure to Pay Wages in a Timely Manner

37.    Plaintiff Rasulev and the Class are manual workers within the meaning of NYLL § 191(1)(a)(i).  They spend well in excess of 25% of their working time performing physical labor.

38.    NYLL § 191(1)(a)(i) requires that Plaintiff and the Class be paid weekly and that wages be paid with no more than a 7-day lag—i.e. not later than seven calendar days after the end of the week in which the wages are earned.

39.    The FLSA requires that wages be promptly paid and that they not be unreasonably delayed.

40.    Defendant failed to pay earned compensation to Plaintiff and the Class with the timeliness required by NYLL § 191(1)(a)(i).

41.    Defendant also delayed payment longer than is reasonable under the FLSA.

42.    At all relevant times the Company's uniform payroll practice was to pay its employees like Plaintiff Rasulev every Tuesday.  The checks, however, were lagged by 18 days: on any given Tuesday the check was for work performed from Saturday to Friday in the week ending 18 days prior.  For example, for the week long pay period ending on Friday, September 18, 2015 Good Care Agency made Plaintiff wait 18 days until Tuesday, October 6, 2016 to receive his pay.

43.    Defendant's failure to promptly pay Plaintiff and the Class was willful, unreasonable, and was motivated by illegitimate business purposes, including Good Care's

desire to transfer money from its workers' pockets to the Company's coffers.  When these

minimum wage workers' wages are discounted for the delay in payment, each employee is paid

less than the minimum wage for the time worked during the pay period.  Defendant's federal and

state overtime violations are similarly exacerbated by the delayed payment.

### E.     Failure to Pay Total Compensation Under Wage Parity Law

44.     As part of its effort to improve the quality of care for New Yorkers who receive

home health care services, in 2011, the New York Legislature enacted Public Health Law §

3614-c, which went into effect as of March 1, 2012.  Commonly known as the Wage Parity Law,

the statute conditions Medicaid reimbursement for home health care services provided in New

York City and the surrounding counties of Westchester, Suffolk, and Nassau upon a home health

care agency's certification that its home care paid statutorily defined  minimum wage.  That

wage is determined by reference to New York City's Living Wage Law (*see* Administrative

Code of City of NY § 6-109[b][1][a], [b][3] ), which sets a minimum wage and health benefits

supplement rate that must be paid by any City service contractor or subcontractor to its

employees who provide home care services.  By referring to the New York City Living Wage

Law, the Wage Parity Law aims to bring total compensation for Medicaid-reimbursed home care

aides in the metropolitan New York area into line with compensation paid to aides who are under

contract with New York City, thereby furthering the legislative purpose of stabilizing the home

care workforce, reducing turnover, and enhancing recruitment and retention of home care

workers.

45.     The Wage Parity Law applies to entities like Good Care Agency that contract

with managed care plans for Medicaid reimbursements.  NYPHL § 3614-c(6).  The Wage Parity

Law applies "equally to services provided by home care aides who work on episodes of care as

direct employees of certified home health agencies, long term home health care programs, or managed care plans, or as employees of licensed home care services agencies, limited licensed home care services agencies, or under any other arrangement."  NYPHL § 3614-c(4).

46.    Good Care Agency has been and continues to be a licensed home care services agency.

47.    Good Care has entered into agreements with one or more managed care plans. Under the terms of these agreements, managed care plans reimburse Good Care Agency for the services performed by its employees with New York state Medicaid funds.  On information and belief, under the terms of these agreements, Good Care Agency was obligated to compensate its home care aides according to the Wage Parity Law.

48.    On information and belief, Good Care Agency received reimbursements from managed care plans.  These reimbursements were funded, at least in part, by New York state Medicaid funds.

49.    Plaintiff Rasulev was a home care aide as defined by the Wage Parity Law.

50.    On information and belief, Good Care Agency received reimbursements funded by New York state Medicaid funds for Plaintiff Rasulev's services from a managed care plan, The New York State Catholic Health Plan, Inc. d/b/a Fidelis Care New York.

51.    The New York State Department of Health periodically publishes official notices of home care worker wage parity minimum rate of total compensation, which provides the breakdown of total hourly compensation of homecare workers.

52.    For the period of March 1, 2015 through February 28, 2016, which includes the entire period of Plaintiff Rasulev's employment with Good Care Agency, the minimum rate home care aide total compensation (Total Compensation) was $14.09, consisting of a Base Wage

of at least $10.00 per hour, Additional Wages of up to $1.69 per hour, and Supplemental

(benefit) Wages of up to $2.40 per hour.

53.    All of Mr. Rasulev's pay stubs show that he was paid only straight time wages of

either $10.00 or $11.00 per hour.  Accordingly, Good Care Agency failed to pay Plaintiff

Rasulev and other members of the Class the total minimum compensation of $14.09 per hour.

## COLLECTIVE ACTION ALLEGATIONS

54.    Plaintiff brings Counts I and II under the FLSA on behalf of himself and all other

similarly situated current and former home health aides, nurses, personal care aides,

homemakers, housekeepers, physical therapists, occupational therapists, speech therapists, social

workers, nutritional therapists, and other medical professionals (collectively "home care

workers") employed by Defendant at any time within the three years prior to the date of the

filing of this action and thereafter (the "FLSA Collective").

55.    At all relevant times, Plaintiff and the FLSA Collective are and have been

similarly situated, have had substantially similar job requirements and pay provisions, and are

and have been subject to Defendant's decision, policy, plan, and common programs, practices,

procedures, protocols, routines, and rules of willfully failing and refusing to pay Plaintiff one-

and-one-half times their regular rates work in excess of 40 hours per workweek.  Defendant also

unreasonably delayed Plaintiff and the FLSA Collective's paychecks by 18 days.  Plaintiff's

claims stated herein are essentially the same as those of the other members of the FLSA

Collective.

56.    Defendant's unlawful conduct, as described in this First Amended Class and

Collective Action Complaint, is pursuant to a corporate policy or practice of minimizing labor

costs.

57.    Defendant is aware or should have been aware that as of October 13, 2015 federal law requires it to pay home care workers an overtime premium for hours worked in excess of 40 per workweek.

58.    Defendant is aware or should have been aware that the FLSA requires that wages be promptly paid and that they not be unreasonably delayed.

59.    Counts I and II are properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

60.    The members of the FLSA Collective are readily ascertainable, can be located through Defendant's records, and would benefit from the issuance of a court supervised notice of this lawsuit and the opportunity to join the lawsuit.

61.    Notice should be sent to the members of the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

62.    Plaintiff brings his claims under the New York Labor Law pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a Class of Good Care Agency employees preliminarily defined as follows:

> All persons who were employed by Good Care Agency as nurses, home health aides, personal care aides, homemakers, housekeepers, physical therapists, occupational therapists, speech therapists, social workers, nutritional therapists, and other medical professionals (collectively "home care workers") who, at any time within six years prior to the date of the filing of this action and thereafter, did not receive full compensation for all overtime hours worked.

Plaintiff also brings his Wage Parity Law claims under the New York Labor Law and New York's common law of unjust enrichment pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a Subclass of Good Care Agency employees preliminarily

defined as follows:

> All persons who were employed by Good Care Agency as health
> aide, personal care aide, home attendant or other licensed or
> unlicensed person whose primary responsibility includes the
> provision of in-home assistance with activities of daily living,
> instrumental activities of daily living or health-related tasks who,
> at any time after March 1, 2012 did not receive total compensation
> as required under the Wage Parity Law.

63.     Excluded from the Class and Subclass (hereafter collectively the "Class" unless

otherwise specified) are Defendant, Defendant's legal representatives, officers, directors, assigns,

and successors, or any individual who has, or who at any time during the class period has had, a

controlling interest in Good Care Agency; and the Judge(s) to whom this case is assigned, their

judicial staffs, and any member of the Judges' immediate family.

64.     The claims of Plaintiff and the Class may properly be maintained as a class action

against Defendant pursuant to the provisions of Federal Rule of Civil Procedure 23.

65.     The size of the Class is more than 100 individuals.  The persons in the Class are

so numerous that the joinder of all such persons is impracticable.

66.     Plaintiff is a member of the Class.  His claims are typical of the claims of the

Class and do not conflict with the interests of any other members of the Class.  All members of

the Class have been subject to and affected by the same or similar conduct.

67.     Plaintiff will fairly and adequately protect the interests of all Class members

because it is in his best interest to vigorously prosecute the claims alleged herein and to obtain

full compensation due to him for the illegal conduct of which he complains.  Plaintiff has

retained competent and experienced class action attorneys to represent his interests and those of

the Class.

68.     Questions of law and fact are common to the Class and predominate over any

questions affecting only individual members, and a class action will generate common answers

- 13 -

to the questions below, which are apt to drive the resolution of this action:

    a.  Whether Defendant failed to pay its employees all overtime compensation earned in violation of N.Y. Labor Law §§ 650 et seq. and 12 N.Y.C.R.R. § 142-2.2;

    b.  Whether Defendant should compensate its employees for an extra hour of pay for all days when they worked more than 10 hours as required by New York's spread-of-hours law;

    c.  Whether Defendant failed to furnish the Class with accurate wage statements, as required by NYLL § 195(3);

    d.  Whether Defendant failed to furnish the Class with an accurate annual wage notice, as required by NYLL § 195(1);

    e.  Whether Defendant failed to pay its employees in accordance with the timing provisions of NYLL § 191(1)(a)(i);

    f.  Whether Defendant failed to pay its employees all Wage Parity Act minimum wages in violation of Public Health Law § 3614-c, and NYLL §§ 198, 663(1);

    g.  Whether, and to what extent, equitable relief should be imposed on Defendant to prevent the Company from continuing its unlawful labor policies; and

    h.  The extent of class-wide injury and the measure of damages for those injuries.

    69.    A class action is superior to all other available methods for resolving this controversy because i) the prosecution of separate actions by Class members will create a risk of adjudications with respect to individual Class members that will, as a practical matter, be dispositive of the interests of the other Class members not parties to this action, or substantially impair or impede their ability to protect their interests; ii) the prosecution of separate actions by Class members will create a risk of inconsistent or varying adjudications with respect to individual Class members, which will establish incompatible standards for Defendant's conduct; iii) Defendant has acted or refused to act on grounds generally applicable to all Class members; and iv) questions of law and fact common to the Class predominate over any questions affecting only individual Class members.

    70.    Accordingly, this action satisfies the requirements set forth under Fed. R. Civ. P.

23(a) and 23(b).

## COUNT I

### (FLSA – UNPAID OVERTIME WAGES)

71.     Plaintiff re-alleges and incorporates by reference each and every allegation

contained in the preceding paragraphs as if fully set forth herein.

72.     At all relevant times, Plaintiff and the Collective were employed by an enterprise

engaged in commerce within the meaning of 29 U.S.C. §§ 203(e), (r), and (s).

73.     At all relevant times, Plaintiff and the Collective were employees of Defendant

within the meaning of 29 U.S.C. § 203(e).

74.     The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*,

and the supporting federal regulations, 29 CFR Part 552 effective as of October 13, 2015, apply

to Good Care Agency and protect Plaintiff and the Collective.

75.     The FLSA 29 U.S.C. §§ 206 and 207 mandate that in calculating overtime the

employer must utilize the employees' regular rate of pay.

76.     In violation of the FLSA and supporting regulations, Good Care Agency has

engaged in a widespread pattern, policy, and practice of failing to pay Plaintiff and the Collective

overtime wages at time-and-a-half their regular rate of pay for all hours that they worked over 40

hours in a workweek.

77.     Defendant's unlawful conduct has been willful and intentional.  Defendant was

aware or should have been aware that its practices with respect to the compensation of Plaintiff

and the Collective are unlawful.  Because Defendant willfully violated the FLSA, a three-year

statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

78.     Defendant has not made a good faith effort to comply with the FLSA with respect

to the compensation of Plaintiff and the Collective.

79.     As a result of Defendant's unlawful acts, Plaintiff and the Collective have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts as well as liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the FLSA.

## COUNT II

## (FLSA – PROMPT PAYMENT VIOLATIONS)

80.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

81.     The FLSA mandates that wages be promptly paid and that they not be unreasonably delayed.

82.     In violation of the FLSA, Defendant has engaged in a widespread pattern, policy, and practice of failing to promptly pay Plaintiff and the FLSA Collective.

83.     Defendant's unlawful conduct has been willful and intentional.  Defendant was aware or should have been aware that its practices with respect to the compensation of Plaintiff and the FLSA Collective are unlawful.  Because Defendant willfully violated the FLSA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

84.     Defendant has not made a good faith effort to comply with the FLSA's prompt payment requirement.

85.     As a result of Defendant's unlawful acts, Plaintiff and the FLSA Collective have been deprived of compensation in amounts to be determined at trial, and are entitled to recovery of such amounts as well as liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the FLSA.

- 16 -

## COUNT III

### (NYLL – UNPAID OVERTIME WAGES)

86.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

87.     The overtime wage provisions of Article 19 of the N.Y. Labor Law and its supporting regulations apply to Defendant and protect Plaintiff and the Class.

88.     Prior to October 13, 2015, the effective date of updated 29 CFR Part 552, Plaintiff was subject to an exemption of Section 13 of the FLSA. N.Y. Labor Law §§ 650 *et seq*. and 12 NYCRR § 142-2.2 state that "an employer shall pay employees subject to the exemptions of section 13 of the Fair Labor Standards Act, as amended . . . overtime at a wage rate of one and one-half times the basic minimum hourly rate."

89.     In violation of N.Y. Labor Law §§ 650 *et seq*. and applicable regulations and wage orders issued by the New York Department of Labor (12 NYCRR § 142-2.2), Good Care Agency has engaged in a widespread pattern and practice of failing to pay its employees full overtime compensation due by paying them a lower overtime rate.

90.     By Defendant's knowing or intentional failure to pay Plaintiff and the Class the full overtime rate, they have violated N.Y. Labor Law Art. 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations.

91.     Due to Defendant's violations of the N.Y. Labor Law, Plaintiff and the Class are entitled to recover from Defendant their unpaid overtime wages earned and due during the six years prior to the commencement of this action and thereafter, as well as liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest, pursuant to N.Y. Labor Law § 663.

## COUNT IV

### (NYLL – SPREAD-OF-HOURS PAY)

92.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

93.     Under 12 NYCRR § 142-2.4 Good Care Agency is required to pay an employee an extra hour of pay for any split-shift or day in which the employee's "spread of hours" exceeds 10 hours.  The relevant spread is the time between the beginning and the end of employee's work day including all working time, time off for meals, and time off duty, as defined by 12 NYCRR § 142-2.18.

94.     Plaintiff and the Class often work a spread of hours in excess of 10 hours per day. However, Defendant never pays these employees an extra hour of pay on each day on which they worked over 10 hours.  Defendant continually violates 12 NYCRR § 142-2.4.

95.     By Defendant's intentional failure to pay Plaintiff and the Class spread-of-hours pay, Defendant has willfully violated N.Y. Labor Law Art. 19, §§ 650 *et seq*., and the supporting New York State Department of Labor regulations.

96.     Defendant failed to make, keep, and preserve accurate records with respect to Plaintiff and the Class, including hours worked each workday and total hours worked each workweek, as required by N.Y. Labor Law § 195(4) and supporting regulations.

97.     Due to Defendant's violations of the N.Y. Labor Law, Plaintiff and the Class are entitled to recover from Defendant their wages earned and due during the six years previous to commencing this action and thereafter, as well as liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT V

### (NYLL – VIOLATIONS RELATED TO TIMELINESS AND FREQUENCY OF PAY)

98.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

99.     Plaintiff and the Class are manual workers within the meaning of NYLL § 191(1)(a)(i).

100.     Defendant willfully failed to pay Plaintiff and the Class earned compensation in a timely manner and with the required frequency in violation of NYLL § 191(1)(a)(i).

101.     Due to Defendant's willful violations of the N.Y. Labor Law, Plaintiff and the Class are entitled to recover from Defendant damages for late payments of wages in the amount of liquidated damages equal to one hundred percent of all late payments, as well as reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest, pursuant to N.Y. Labor Law § 198.

## COUNT VI

### (NYLL – FAILURE TO PROVIDE ANNUAL WAGE NOTICES)

102.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

103.     Defendant willfully failed to provide Plaintiff and the Class with wage notices, as required by N.Y. Labor Law § 195(1).

104.     Through its knowing or intentional failure to provide Plaintiff and the Class with the wage notices required by the NYLL, Defendant has willfully violated NYLL, Article 6, §§ 190, *et seq.*, and the supporting New York State Department of Labor Regulations.

105.     Due to Defendant's willful violations of the N.Y. Labor Law, Plaintiff and the

Class are entitled to statutory penalties of $50 for each workday that Defendant failed to provide them with wage notices, or up to a total of $5,000, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL § 198(1-b).

## COUNT VII

### (NYLL – FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS)

106.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

107.    Defendant willfully failed to provide Plaintiff and the Class with accurate statements of wages, as required by N.Y. Labor Law § 195(3).

108.    Through its knowing or intentional failure to provide Plaintiff and the Class with the accurate wage statements required by the NYLL, Defendant has willfully violated NYLL, Article 6, §§ 190, *et seq.*, and the supporting New York State Department of Labor Regulations. Due to Defendant's willful violations of NYLL, Article 6, § 195(3), Plaintiff and the Class are entitled to statutory penalties of $250 for each workweek that Defendant failed to provide them with accurate wage statements, or a total of up to $5,000, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by the NYLL, Article 6, § 198(1-d).

## COUNT VIII

### (NYLL – FAILURE TO PAY EARED WAGES MANDATED BY THE WAGE PARITY LAW)

109.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

110.    New York Labor Law § 190(1) defines "Wages" as "earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis.  The term "wages' also includes benefits or wage supplements

- 20 -

as defined in section one hundred ninety-eight-c of this article, except for the purposes of sections one hundred ninety-one and one hundred ninety-two of this article."

111.    New York Labor Law § 198-c(2) further provides; "As used in this section, the term "benefits or wage supplements" includes, but is not limited to, reimbursement for expenses; health, welfare and retirement benefits; and vacation, separation or holiday pay."

112.    Pursuant to New York Labor Law § 198 employers such as the Defendant who fail to pay hourly employees wages in conformance with New York Labor Law shall be liable to the hourly employees for the wages that were not paid, and court costs and attorneys' fees incurred in recovering the unpaid wages.

113.    The Total Compensation for home care workers as mandated by Wage Parity Law is wages under New York Labor Law.

114.    Defendant was obligated to pay its home care aide employees the total compensation of $14.09 per hour under the Wage Parity Law because it entered into agreements with managed care plans and was receiving reimbursements funded by the New York Medicaid program.

115.    Plaintiff and the Subclass were entitled to receive the total compensation of $14.09 per hour under the Wage Parity Law.

116.    Defendant never paid Plaintiff and the Subclass the Total Compensation of $14.09 per hour as required by the Wage Parity Law.

117.    Defendant's failure to pay Plaintiff and the Subclass the total compensation as required by the Wage Parity Law was without good faith basis to believe that such failure was in compliance with the law.

118.    Due to Defendant's violations of the Wage Parity Law and N.Y. Labor Law,

Plaintiff and the Subclass are entitled to recover from Defendant their wages earned and due during the six years previous to commencing this action and thereafter, as well as liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT IX

## (IN THE ALTERNATIVE, UNJUST ENRICHMENT)

119.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

120.    If Plaintiff's and the Subclass' New York Labor Law claim for wages required by the Wage Parity Law fails for any reason, Defendant was unjustly enriched by failing to pay Plaintiff and the Subclass the total compensation required by the Wage Parity Law.

121.    Defendant was enriched by keeping the underpayment, which the difference between what it should have paid under the Wage Parity Law and what it actually paid to the Plaintiff and the Subclass.

122.    By keeping the underpayment, Defendant was enriched at Plaintiff's and the Subclass member's expense.

123.    The circumstances of the enrichment are such that equity and good conscience require restitution to which Plaintiff and the Subclass are entitled.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Iskander Rasulev on his own behalf and on behalf of all other similarly situated persons, seeks the following relief:

A.    That at the earliest possible time, Plaintiff be allowed to give notice of this Collective Action, or that the Court issue such notice to the Collective, as defined above. Such notice shall inform the Collective of the filing of this civil action, the nature of this

action, and their right to join this action;

B.      Unpaid overtime pay and an additional and an equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

C.      An additional and an equal amount of all unreasonably delayed payments as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

D.      Unpaid overtime pay pursuant to N.Y. Labor Law Art. 6 and Art. 19, §§ 650 *et seq*., and the supporting New York State Department of Labor regulations, and an additional and equal amount as liquidated damages pursuant to N.Y. Labor  Law  § 663;

E.      Spread of hours pay pursuant to New York Labor Law Article 19 and 12 NYCRR § 142-2.4;

F.      All damages pursuant to Defendant's failure to provide annual wage notices and accurate wage statements in violation of N.Y. Labor  Law §§ 195(1) and 195(3);

G.      All damages pursuant to Defendant's failure to comply with the Wage Parity Law;

H.      Certification of the Class and Subclass set forth above pursuant to Rule 23 of the Federal Rules of Civil Procedure;

I.      Designation of Plaintiff as class representative of the Class and Subclass, and designation of counsel of record as Class Counsel;

J.      Damages of at least $5,000,000 million for unpaid overtime wages and benefits;

K.      Pre-judgment interest and post-judgment interest;

L.      Issuance of a declaratory judgment that the practices complained of herein are unlawful under N.Y. Labor Law Art. 19, §§ 650 *et seq*., and the supporting New York State Department of Labor regulations and N.Y. Public Health Law 3614-c;

M.      Issuance of an injunction requiring Defendant to pay all statutorily required wages pursuant to the N.Y. Labor Law and N.Y. Public Health Law and an order enjoining Defendant from continuing its unlawful policies and practices as described herein with respect to the Class, Subclass, and Collective;

N.      Punitive damages;

O.      Reasonable attorneys' fees and costs of the action; and

P.      Such other relief as this Court shall deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Rasulev requests trial by jury in this action of all issues so triable.


Dated:  Armonk, New York
        November 4, 2016

                    **WITTELS LAW, P.C.**

                    By:     /s/ Steven L. Wittels
                            Steven L. Wittels (SW-8110)
                            J. Burkett McInturff (JM-4564)
                            Tiasha Palikovic (TP-5697)
                            18 HALF MILE ROAD
                            ARMONK, NEW YORK 10504
                            Telephone: (914) 319-9945
                            Facsimile:  (914) 273-2563
                            slw@wittelslaw.com
                            jbm@wittelslaw.com
                            tpalikovic@wittelslaw.com

                            *Attorneys for Plaintiff and the Class*

- 24 -