**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------X

ISKANDER RASULEV,

                         Plaintiff,

-against-                                   **No:  16 Civ. 1993 (LDH) (CLP)**

GOOD CARE AGENCY, INC.,

                         Defendant.

-------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND**
**RELATED RELIEF**

**WITTELS LAW, P.C.**
Steven L. Wittels
J. Burkett McInturff
Tiasha Palikovic
18 HALF MILE ROAD
ARMONK, NEW YORK 10504
Telephone: (914) 319-9945
Facsimile:  (914) 273-2563

*Lead Counsel for Plaintiff and the Class*

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

I.    FACTUAL AND PROCEDURAL BACKGROUND ..................................................2

      A.    Factual Allegations ................................................................ 2

      B.    Plaintiff's Investigation.................................................. 2

      C.    Litigation................................................................... 3

      D.    Settlement Negotiations ........................................... 4

II.    SUMMARY OF THE SETTLEMENT TERMS ...............................................5

      A.    The Settlement Amount ....................................... 5

      B.    Eligible Class Members ..................................... 5

      C.    Distribution of Settlement Fund Among Subclasses ....................... 6

      D.    Allocation Formula .............................................. 7

      E.    Releases........................................................... 7

      F.    Attorneys' Fees and Litigation Costs............................. 8

      G.    Service Awards .................................................. 8

      H.    Claims Administrator ....................................... 8

      I.    Additional Provisions ...................................... 9

III.    RULE 23 CLASS ACTION SETTLEMENT PROCEDURE ...................................9

IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ..........10

      A.    The Settlement is Fair, Reasonable, and Adequate........................ 13

          1.    Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1). ................................................. 14

          2.    The Reaction of the Class (*Grinnell* Factor 2)................................. 15

          3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3). ........................ 15

4.  Plaintiff Faces Real Risks if the Case Proceeds (*Grinnell* Factors 4 and 5). .............................................................................. 17

5.  Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6). ............................................................... 18

6.  Defendant Likely Could Not Withstand a Greater Judgment (*Grinnell* Factor 7). ............................................................... 19

7.  The Settlement Amount is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9).............................................................. 19

V.     THE RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED ................20

A.  Numerosity .................................................................................. 22

B.  Commonality ............................................................................... 22

C.  Typicality .................................................................................... 23

D.  Adequacy of the Named Plaintiffs ............................................. 24

E.  Certification is Proper Under Rule 23(b)(3) ............................... 26

1.  Common Questions Predominate .................................... 26

2.  A Class Action is a Superior Mechanism ....................... 27

VI.    THE FLSA COLLECTIVE SHOULD BE CONDITIONALLY CERTIFIED ..........29

VII.   WITTELS LAW SHOULD BE APPOINTED AS CLASS COUNSEL ....................30

VIII.  THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE FAIR ......31

CONCLUSION........................................................................................ 333

## TABLE OF AUTHORITIES

**Cases**

*Aboud v. Charles Schwab & Co., Inc.*,
No. 14 Civ. 2712 (PAC), 2014 WL 5794655 (S.D.N.Y. Nov. 4, 2014)................................ 15

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)...................................................................................... 26, 27, 28

*Azogue v. 16 for 8 Hospitality LLC*,
No. 13 Civ. 7899, 2016 WL 4411422 (S.D.N.Y. Aug. 19, 2016)............................................ 10

*Ballinger v. Advance Magazine Publishers, Inc.*,
No. 13 Civ. 4036 (HBP), 2014 WL 7495092 (S.D.N.Y. Dec. 29, 2014) .............................. 28

*Berkson v. Gogo LLC*,
147 F. Supp. 3d 123 (E.D.N.Y. 2015) ................................................................. 12

*Bodon v. Domino's Pizza, LLC*,
No. 09 Civ. 2941, 2015 WL 588656 (E.D.N.Y. Jan. 16, 2015)....................................... 19, 20

*Chambery v. Tuxedo Junction Inc.*,
No. 12 Civ. 06539 (EAW), 2014 WL 3725157 (W.D.N.Y. July 25, 2014) ......................... 19

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974).......................................................................... 13, 20

*Clem v. KeyBank, N.A.*,
No. 13 Civ. 789 (JCF), 2014 WL 2895918 (S.D.N.Y. June 20, 2014)................................. 11

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995).......................................................................... 22

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007)............................................................................ 26

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)............................................................................ 14

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)............................................................................ 25

*Garcia v. Pancho Villa's of Huntington Village, Inc.*,
No. 09 Civ. 486 (ETB), 2012 WL 1843785 (E.D.N.Y. May 21, 2012) ................... 11, 12, 16

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)............................................................................ 13

*Green v. Wolf Corp.*,
406 F.2d 291 (2d Cir. 1968)............................................................................ 27

*Hall v. ProSource Technologies*, LLC,
  No. 14 Civ. 2502 (SIL), 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ........................ *passim*

*Hernandez v. Immortal Rise, Inc.*,
  306 F.R.D. 91 (E.D.N.Y. 2015) .................................................................................. *passim*

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................... 14, 17, 19

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ......................... 11

*In re Painewebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y 1997) ............................................................................... 17

*In re Penthouse Executive Club Comp. Litig.*,
  No. 10 Civ. 1145 (KMW), 2013 WL 1828598 (S.D.N.Y. Apr. 30, 2013) ............................ 16

*In re Traffic Exec. Ass'n*,
  627 F.2d 631 (2d Cir. 1980) ...................................................................................... 12

*In re Visa Check/Master Money Antitrust Litig*,
  280 F.3d 124 (2d Cir. 2001) ...................................................................................... 26

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ...................................................................................... 15

*In re Zyprexa Prod. Liab. Litig.*,
  253 F.R.D. 69 (E.D.N.Y. 2008) ................................................................................ 28

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000) ...................................................................................... 20

*Karic v. Major Automotive Companies, Inc.*,
  No. 09 Civ. 5708 (CLP), 2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016) ........................ *passim*

*Kochilas v. National Merchant Services, Inc.*,
  No. 14 Civ. 00311, 2015 WL 5821631 (E.D.N.Y. Oct. 2, 2015) ......................... 29

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) ...................................................................................... 22

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ...................................................................................... 29

*Puglisi v. TD Bank, N.A.*,
  No. 13 Civ. 637 (LDW) (GRB), 2015 WL 574280 (E.D.N.Y. Feb. 9, 2015) ................ *passim*

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
  237 F.R.D. 26 (E.D.N.Y. 2006) ................................................................................ 22

*Reid v. SuperShuttle Intern., Inc.*,
  No. 08 Civ. 4854 (JG) (VVP), 2012 WL 3288816 (E.D.N.Y. Aug. 10, 2012) .......... 14, 18, 23

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ................................................................. 24

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986) ................................................................. 26

*See Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ................................................ 16, 20, 23, 28

*Sierra v. Spring Scaffolding LLC*,
   No. 12 Civ. 05160, 2015 WL 10912856 (E.D.N.Y. Sep. 30, 2015) ............ 8, 17, 30

*Siler v. Landry's Seafood House–North Carolina, Inc.*,
   No. 13 Civ. 587, 2014 WL 2945796 (S.D.N.Y. June 30, 2014) .......................... 17

*Spencer v. No Parking Today, Inc.*,
   No. 12 Civ. 6323, 2013 WL 1040052 (S.D.N.Y. Mar. 15, 2013) ........................ 22

*Sukhnandan v. Royal Health Care of Long Island LLC*,
   No. 12 Civ. 4216 (RLE), 2013 WL 4734818 (S.D.N.Y. Sep. 3, 2013) ................. 12

*Toure v. Amerigroup Corp.*,
   No. 10 Civ. 5391 (RLM), 2012 WL 1432302 (E.D.N.Y. Apr. 20, 2012) ........... 11, 12, 16, 32

*Toure v. Cent. Parking Sys.*,
   No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sep. 28, 2007) ......................... 25

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S.Ct. 2541 (2011) ....................................................................... 23

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................................. 10, 11

*Yim v. Carey Limousine NY, Inc.*,
   No. 14 Civ. 5883 (WFK) (JO), 2016 WL 1389598 (E.D.N.Y. Apr. 7, 2016) ...................... 12

*Zeller v. PDC Corporation*,
   No. 13 Civ. 5035 (ARR) (JO), 2016 WL 748894 (E.D.N.Y. Jan. 28, 2016) ................... 18, 22

**Statutes**

29 U.S.C. § 201 *et. seq.* ...................................................................... 2, 22, 36, 38

29 U.S.C. § 216(b) ........................................................................... 29, 36, 38

New York Labor Law ..................................................................... 1, 2, 6, 23, 24

New York Wage Parity Law………………………………………………………………………2, 6

**Rules**

Fed. R. Civ. P. 23(a) ................................................................. 21, 24, 25, 26

Fed. R. Civ. P. 23(b) ........................................................... 2, 21, 26, 27, 28

Fed. R. Civ. P. 23(c) .................................................................. 31, 32

Fed. R. Civ. P. 23(e) ................................................................... 9, 20

Fed. R. Civ. P. 23(g) ...................................................................... 30

Fed. R. Civ. P. 23(h) ....................................................................... 8

Fed. R. Civ. P. 54(d)……………………………………………………………8

**Treatises**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*,
 (4th ed. 2002)...................................................................... 9, 12, 13, 21

*Manual for Complex Litigation* (3d ed.) ...................................... 12

Wright & Miller, 7A Fed. Prac. & Proc. Civ. (3d ed.) .................. 25

## INTRODUCTION

Plaintiff Iskander Rasulev ("Plaintiff") brings this wage and hour collective and class action against Good Care Agency, Inc. ("Defendant" or "Good Care") to recover unpaid overtime wages for all home care workers who worked more than 40 hours a week without proper overtime compensation.  Following many months of extensive investigation and exchange of information, Plaintiff was able to obtain a favorable settlement after a lengthy and hard-fought mediation led by an experienced mediator well versed in wage and hour class actions.  The proposed settlement provides for an aggregate sum of $1,500,000.00 to be distributed among two subclasses: 1) the "Overtime & Fair Labor Standards Act Late Payment Subclass," which includes current and former employees of Defendant who have claims of alleged failure to pay overtime wages under the Fair Labor Standards Act ("FLSA") and/or the New York Labor Law ("NYLL") and claims related to the alleged untimeliness of payments under the FLSA and/or NYLL, and 2) the "Additional Claims Subclass," which includes current and former employees of Defendant who have claims for failure to pay wages in accordance with the New York Wage and Parity Law, failure to pay any spread of hours purportedly owed under the NYLL, and failure to provide proper wage notices under the Wage Theft Prevention Act during the covered period.

Plaintiff now brings this motion for preliminary approval of the settlement as both a class and collective action on behalf of himself and all others similarly situated.  The proposed settlement satisfies all of the criteria for preliminary approval under federal law.  Accordingly, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the proposed settlement as described in the Final Settlement Agreement and Release ("Settlement

Agreement"),[1] attached as Exhibit A to the Declaration of Steven L. Wittels ("Wittels Decl.");[2]

(2) conditionally certify the proposed "Rule 23 Class" under Federal Rule of Civil Procedure

23(b)(3) for settlement purposes; (3) conditionally certify the proposed "FLSA Collective" under

Section 216(b) of the Fair Labor Standards Act ("FLSA") for settlement purposes and authorize

that notice of the action be sent to FLSA Collective members; (4) appoint Wittels Law, P.C. as

Class Counsel ("Class Counsel"); (5) approve the proposed Notice of Proposed Class Action

Settlement and Final Approval Hearing  ("Notice") and the Reminder Postcard (attached as

Exhibits B and C to the Wittels Decl.) (together, the "Notices") and related documents, and

direct their distribution; and (6) grant such other relief as the Court deems just and proper.

# I.  FACTUAL AND PROCEDURAL BACKGROUND

## A.  Factual Allegations

Plaintiff and the members of the proposed classes ("Class Members") are current and

former home health care workers employed by Good Care Agency, Inc.  Plaintiff alleges that

Defendant violated the FLSA, 29 U.S.C. § 201 *et. seq.*, NYLL Article 6 and Article 19 and New

York Wage Parity Law.  Defendant represents that it employed over 1,750 home health care

workers in New York during the applicable statute of limitations period.

## B.  Plaintiff's Investigation

Prior to commencing this action, Plaintiff's Counsel conducted a thorough investigation

into the Class Members' claims, their damages, and the likelihood of obtaining class

certification.  Wittels Decl. ¶ 13.  Further, Plaintiff's Counsel performed extensive background

---

[1] To correct an inconsistency in the Settlement Agreement, the parties have agreed to omit the following term "alleged late payment of wages under the New York Labor Law ('NYLL')" from the Settlement Agreement, para 1.1 (Definition) and Additional Claims Subclass definition, para 3.1(b)(ii).
[2] Unless otherwise indicated, all exhibits are attached to the Wittels Decl.

research on Good Care, and obtained information on Good Care's compensation policies and practices. *Id*. ¶ 14.  Plaintiff's Counsel also conducted in-depth interviews concerning, *inter alia*, Good Care's treatment of its employees, the number of hours home aides worked, and other information pertinent to Plaintiff's claims in this action.  *Id*. Plaintiff's Counsel also obtained and reviewed numerous documents and communications from Plaintiff and conducted research and investigation into the pertinent case law and the facts in other FLSA and state wage and hour class actions that informed the present case, as well as extensive legal research and analysis concerning the unique and infrequently litigated claims at issue in this litigation.  *Id*.

**C.**    **Litigation**

On April 22, 2014 Plaintiff filed a Class Action and Collective Action Complaint against Good Care in the United States District Court for the Eastern District of New York on behalf of himself and all others similarly situated alleging failure to pay him at the proper overtime rate, denial of "spread of hours" pay for time worked in excess of 20 hours, and record keeping violations.  *Id*. ¶ 15.  The Complaint seeks recovery of wages, liquidated damages, interest, an order enjoining Good Care's overtime and spread of hours practices, and attorneys' fees and costs.  *Id*. ¶ 16.  While fully denying any liability, Good Care made four Rule 68 offers of judgment to Plaintiff between May 16, 2016 and July 19, 2016, all of which Plaintiff rejected.  *Id*. ¶ 17.  Following an initial case management conference before the Honorable Cheryl L. Pollak and the filing of an Amended Complaint adding additional causes of action under both federal and state wage and hour laws, including failure to pay Good Care's workers on a timely basis and failure to comply with the New York Wage Parity Law, Plaintiff engaged with Defendant in numerous hard-fought proceedings.  These include multiple appearances before Judge DeArcy Hall on Defendant Good Care's proposed motions to stay discovery and

dismiss the complaint, and extensive negotiations regarding Plaintiff's discovery demands. Finally, on December 27, 2016 the Parties filed a Joint Motion to Stay the case pending finalization of settlement. *Id*. ¶ 18.

### D.    Settlement Negotiations

Following months of post-suit discussions and negotiations, the Parties agreed to try and resolve the case in an effort to avoid expensive, time consuming, and protracted litigation. On November 30, 2016, the Parties entered into a Pre-Mediation Agreement, which tolled the limitations period on the federal and state wage and hour claims and contained confidentiality provisions facilitating the exchange of information and documentation, including time and payroll data. The Parties then exchanged documents and other data to assess the claims and defenses and to calculate potential damages in advance of mediation. *Id*. ¶ 19.

Prior to and in connection with the mediation, Good Care produced thousands of pages of documents, including time and payroll records, and data showing the number of home care workers it employed. *Id*. ¶ 20. Plaintiff also engaged the services of Vekker Consulting, LLC, an experienced wage and hour economic and statistical consulting firm headed by a University of Pennsylvania Professor of Economics and Statistics. *Id*. ¶ 21. Using the documents provided by Defendant, and Plaintiff's Counsel's prior and subsequent research and investigation, and in consultation with Dr. Alexander Vekker, Plaintiff prepared and submitted a comprehensive confidential mediation brief. *Id*. In support of its position, Defendant also submitted a thorough and comprehensive confidential mediation brief. *Id*.

On December 22, 2016, the Parties participated in a lengthy mediation at the Atlanta offices of Hunter Hughes, Esq., a highly regarded mediator with extensive experience in the wage and hour class and collective action context. Aided by mediator Hughes, at the conclusion

of the mediation session the Parties reached a memorandum of understanding resulting in this Agreement.  Settlement Agreement, Recitals.  At all times, the Parties' negotiations have been vigorous, adversarial, and at arms' length.  *Id*. ¶ 22.

## II.   SUMMARY OF THE SETTLEMENT TERMS

### A.   The Settlement Amount

Under the Settlement Agreement, Good Care has agreed to make a settlement payment of One Million, Five Hundred Thousand Dollars and No Cents ($1,500,000.00) ("Settlement Fund").  Wittels Decl. ¶ 23, Ex. A (Settlement Agreement) § 3.1.  Each Class Member is entitled to a *pro rata* share of the Settlement Fund based on each individual's aggregate damages for all of the claims alleged in the Amended Complaint, net of administration costs, litigation expenses, and attorneys' fees.  Settlement Agreement § 3.1(A).  The average estimated payment to Class Members who both cash the settlement check and submit a claims form is approximately $560, with a minimum payment of $50 to each class member.  Wittels Decl. ¶ 23.

### B.   Eligible Class Members

Class members who are entitled to receive payments from the Settlement Fund include two groups of Good Care workers: the "Rule 23 Class" and the "FLSA Collective" (together, "Class Members").  Settlement Agreement, §§ 1.8, 1.17, 1.29.  The "Rule 23 Class" consists of all individuals who have been employed by Defendant as Home Health Care Attendants—which includes hourly Home Health Attendants, Personal Care Assistants, Personal Care Assistants Unskilled, Consumer Directed Personal Assistance Program (CDPAP) workers and Live-in Personal Care Attendants—at any time from April 1, 2012 through the date the Court issues the Order Granting Preliminary Approval.  *Id*. § 1.29.  The "FLSA Collective" consists of all

individuals who worked for Defendant as Home Health Care Attendants at any time from April 22, 2013 through the date of preliminary approval.  *Id*. § 1.17.

### C. Distribution of Settlement Fund Among Subclasses

The Settlement Fund is to be allocated to Class Members in two subclasses: the "Overtime & FLSA Late Payment" Subclass and the "Additional Claims Subclass."  *Id.* § 3.1 (B).  The "Overtime & FLSA Late Payment" Subclass includes current and former employees of Defendant during the Covered Period who have claims of alleged failure to pay overtime wages under the FLSA and/or NYLL and for claims related to the alleged untimeliness of payments under the FLSA and/or NYLL.  *Id.* § 1.22.  The "Additional Claims Subclass" includes current and former employees of Defendant who have claims for alleged failure to pay wages in accordance with the New York Wage Parity Law, alleged failure to pay any spread of hours purportedly due under the NYLL, and alleged failure to provide proper wage notices under the Wage Theft Prevention Act during the Covered Period.

Each member of the "Overtime & FLSA Late Payment Subclass" will be paid a *pro rata* share of $600,000.00 (minus administration costs, litigation expenses, and attorneys' fees) based on each individual's aggregate damages for claims for overtime or late wage payments. Settlement Agreement § 3.1(B)(i).  Such subclass members will not be required to submit a claim form in order to receive payment; any member of this subclass who cashes a settlement check will be opting into the action under the FLSA, and waiving and releasing any FLSA claims and any NYLL claims for overtime.  *Id.*

Each member of the "Additional Claims Subclass" will be paid a *pro rata* share of $385,000.00 for claims under the New York Wage Parity Law, and failure to provide proper wage notices under the Wage Theft Prevention Act.  *Id.* § 3.1(b)(ii).  Each such member will file

a valid Claim Form in order to receive payment.  *Id.*  Those who do not opt out of the class will waive all claims in the litigation under New York law, regardless of whether they file a valid Claim Form or cash a settlement check.  *Id.*

### D.    Allocation Formula

The Claims Administrator will mail a check issued to each member of the "Additional Claims Subclass" who timely submits a completed Claim Form (together with the Plaintiff, the "Authorized Claimants"), calculated based on each individual's aggregate damages for all of the claims alleged in the Amended Complaint.  *Id.* § 3.6 (C).  The Claims Administrator will mail the checks to Authorized Claimants within twenty-one (21) days of the Effective Date.  *Id.*  The "Effective Date" is the latter of the first day following the last of the following occurrences:

a.  Thirty (30) days following the Court's Order Granting Final Approval of the Settlement if no appeal is taken from the final approval order; or

b.  The Court's entry of a final order and judgment after resolving any appeals.

*Id.* § 1.13.  The Claims Administrator will use reasonable efforts to make an additional mailing to Authorized Claimants whose checks are returned because of incorrect addresses, including by using social security numbers to obtain better address information.  *Id.* § 3.6 (C).

### E.    Releases

Upon the Effective Date, Plaintiff and each Rule 23 Class Member who does not timely opt out of the Class fully releases and discharges Defendant from all New York state law claims asserted in the action.  This release includes claims for all damages arising from any such claims, including claims for liquidated damages, interest, and attorneys' fees and costs.  In addition, each "Overtime & FLSA Late Payment" Subclass member who cashes a settlement check specifically and affirmatively releases Defendant from any FLSA claims asserted in the action.  *Id.* § 3.8.

### F.    Attorneys' Fees and Litigation Costs

Class Counsel will request that the Court approve litigation expenses and attorneys' fees of no more than 30% of the Settlement Fund.  *Id*. § 3.3.  This sum is consistent with fee awards in the Second Circuit.  *See Hall v. ProSource Technologies*, LLC, No. 14 Civ. 2502 (SIL), 2016 WL 1555128, at *11 (E.D.N.Y. Apr. 11, 2016) ("33% of the common fund is considered routine and therefore reasonable.") (internal citations omitted)); *Sierra v. Spring Scaffolding LLC*, No. 12 Civ. 05160, 2015 WL 10912856, at *7 (E.D.N.Y. Sep. 30, 2015) (same).  Pursuant to Federal Rule of Civil Procedure 23(h) and 54(d)(2), Plaintiff's Counsel will apply for approval of attorneys' fees and expenses along with the Motion for Final Approval of the Settlement.

### G.    Service Awards

In recognition of the services he rendered on behalf of the Rule 23 Class and the FLSA Collective, Plaintiff will apply for a service award of no more than $15,000.00.  *Id*. § 3.4.  This proposed award is intended to compensate Mr. Rasulev for his valuable efforts in assisting counsel in developing the theories of the case and obtaining evidence used to convince Defendant of its risks in defending against liability.  The service award also recognizes the risks Plaintiff incurred in coming forward publicly with his claim.  Plaintiff will move for Court approval of the Service Award simultaneously with the Motion for Final Approval of the Settlement.

### H.    Claims Administrator

The Parties have agreed on the selection of the national firm AB Data as Claims Administrator to provide notice to the Class and administer payment of the settlement to Class Members.  *Id*. § 1.5.  The Claims Administrator's fees will be paid from the Settlement Fund.  *Id*. §§ 2.1, 3.1(B)(v).

## I.      Additional Provisions

Defendant agrees to provide the Claims Administrator and Class Counsel, within 14 days after preliminary approval, with a list of the (1) names, (2) last known addresses, including email addresses (if known), (3) last known telephone numbers, (4) social security numbers, and (5) dates of employment for each Class Member.  *Id*. § 2.6(B).

## III.      RULE 23 CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1.  Preliminary approval of the proposed settlement after submission to the Court of a motion for preliminary approval;

2.  Dissemination of mailed notice of settlement to all affected class members; and

3.  A final settlement approval hearing for the court to consider the fairness, adequacy, and reasonableness of the settlement.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") §§11.22, *et seq.* (4th ed. 2002).  This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.  With this motion, Plaintiff requests that the Court take the first step—granting preliminary approval of the Settlement Agreement, conditionally certifying the settlement class, and approving the proposed Notices and authorizing their dissemination to the Class.

The Parties submit the following proposed schedule for the final resolution of this matter for the Court's consideration and approval:

1.  Within fourteen (14) days after entry of the Preliminary Approval Order, Defendant will provide the Claims Administrator and Class Counsel with a Class List, containing, *inter alia*, the names, last known addresses, and employee identification numbers for each Class Member.  Settlement Agreement, § 2.6 (B).

2.  Within fourteen (14) days of receiving the Class List, the Claims

9

Administrator will mail and email the Notice to Class Members. *Id*. § 2.6 (C).

3.  Forty-five (45) days after the initial mailing of the Notice, the Claims Administrator will mail and email a reminder note to Class Members who have not returned a valid Claim Form. *Id*. § 2.7 (G).

4.  Class Members will have sixty (60) days after the date the Notice is mailed and emailed to submit claim forms to participate in the Settlement, opt out of the Settlement (for members of the Rule 23 Class), or object to it. *Id*. §§ 1.4, 2.7 (A), 2.8 (A).

5.  A final Fairness Hearing will be held as soon as is convenient for the Court. *Id*. § 2.9.

6.  Plaintiff will file a Motion for Final Approval of Settlement no later than seven (7) days before the Fairness Hearing. *Id*.

7.  After the final Fairness Hearing, if the Court grants Plaintiff's Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment. *Id*. § 2.5.

8.  Not later than twenty-one (21) days following the Effective Date, the Claims Administrator will disburse settlement checks to the Class Members and make payments to the Plaintiff for Service Awards, the Claims Administrator for all administration costs, and Class Counsel for litigation expenses and attorneys' fees, provided no appeals are filed. *Id*. §§ 3.3, 3.4, 3.6 (C).

## IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

The law strongly favors compromise and settlement of class actions. *See Karic v. Major Automotive Companies, Inc.*, No. 09 Civ. 5708 (CLP), 2016 WL 1745037, at *4 (E.D.N.Y. Apr. 27, 2016) (noting that "[j]udicial policy favors the settlement and compromise of class actions") (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005)).  In addition, courts encourage early settlement of class actions "because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Azogue v. 16 for 8 Hospitality LLC*, No. 13 Civ. 7899, 2016 WL 4411422, at *3 (S.D.N.Y. Aug. 19, 2016) (internal quotations and citation omitted); *see also Clem v.*

*KeyBank, N.A.*, No. 13 Civ. 789 (JCF), 2014 WL 2895918, at *5 (S.D.N.Y. June 20, 2014) (commending parties for acting responsibly in reaching early settlement).

The approval of a proposed class action settlement is a matter of discretion for the trial court. *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637 (LDW) (GRB), 2015 WL 574280, at *1 (E.D.N.Y. Feb. 9, 2015) (citing *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998)). "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties." *Id.* (internal quotation marks omitted). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ." *Id.* (internal quotations omitted); *see also Garcia v. Pancho Villa's of Huntington Village, Inc.*, No. 09 Civ. 486 (ETB), 2012 WL 1843785, at *2 (E.D.N.Y. May 21, 2012) (same); *see also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement."). Indeed, "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 99 (E.D.N.Y. 2015) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d at 116) (internal quotation marks omitted). The force of this presumption is increased when a settlement is reached with the assistance of an experienced mediator, as is the case here. *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 WL 1843785, at *2; *Toure v. Amerigroup Corp.*, No. 10 Civ. 5391 (RLM), 2012 WL 1432302, at *1 (E.D.N.Y. Apr. 20, 2012).

Preliminary approval requires only the Court's "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the

settling parties. *Puglisi v. TD Bank, N.A.*, 2015 WL 574280, at *1 (citing *Newberg* § 11.25). In fact, "[c]ourts often grant preliminary settlement approval without requiring a hearing or a court appearance." *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216 (RLE), 2013 WL 4734818, at *1 (S.D.N.Y. Sep. 3, 2013). To grant preliminary approval, the Court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *Garcia*, 2012 WL 1843785, at *3 (quoting *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980)); *Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness…and appears to fall within the range of possible approval," the court should permit notice to be sent to class members) (quoting *Manual for Complex Litigation* (3d ed.) § 30.41). "[W]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representative or segments of the class and falls within the reasonable range of approval, preliminary approval is granted." *Berkson v. Gogo LLC*, 147 F. Supp. 3d 123, 130 (E.D.N.Y. 2015) (internal citations omitted).

Here, the Settlement was reached after Class Counsel conducted a thorough investigation and evaluated the proposed Class' claims and defenses, and after vigorous arm's-length negotiations between the Parties that were facilitated by a noted employment law mediator. Wittels Decl. ¶ 22. Accordingly, this settlement bears all the hallmarks of a fair settlement. *See, e.g.*, *Yim v. Carey Limousine NY, Inc.*, No. 14 Civ. 5883 (WFK) (JO), 2016 WL 1389598, at *4 (E.D.N.Y. Apr. 7, 2016) (finding that settlement negotiations were fair where the parties were represented by knowledgeable counsel, engaged in discovery, and had their negotiations

overseen by an experienced mediator); *Toure v. Amerigroup Corp.*, 2012 WL 1432302, at *1 (same).

### A.      The Settlement is Fair, Reasonable, and Adequate

In evaluating class action settlements, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, and to determine whether the Settlement falls within the range of possible final approval or "the range of reasonableness," *id*. at § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the Settlement.

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the state of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the Defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463. These factors are not to be applied in a rigid, formalistic manner.  Rather, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice."  *Id*. at 468.  Here, the totality of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

1. **Litigation Through Trial Would be Complex, Costly, and Long (_Grinnell_ Factor 1).**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant risk, expense, and delay and instead ensure recovery for the Class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case is no exception, with over 1,750 Class Members, and claims under federal and state law.

Continued litigation will only add expense and delay.  Extensive discovery will be required to establish individual and class-wide liability and damages.  In addition, the Parties likely would file cross-motions for summary judgment.  If the Court denied the motions, a lengthy, fact-intensive trial would be necessary.  A trial would consume tremendous time and resources for the Parties and the Court.  Further, any judgment would likely be appealed, only extending the litigation and further prolonging a resolution.  The Settlement, on the other hand, makes substantial monetary relief available to Class Members in a prompt and efficient manner and avoids the risks and costs inherent in class actions specifically, and litigation generally. Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.  *See, e.g., Karic v. Major Automotive Companies, Inc.*, 2016 WL 1745037, at *5 (noting that "[i]n the absence of a settlement, further litigation in this case would clearly cause additional expense and delay, and could lead to a fact-intensive trial."); *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. at 100 (factor weighs in favor of approval because class and collective action litigation to recover overtime wages "would be complex, expensive, and long"); *Reid v. SuperShuttle Intern., Inc.*, No. 08 Civ. 4854 (JG) (VVP), 2012 WL 3288816, at *2 (E.D.N.Y. Aug. 10, 2012) (factor favors approval

because "[a]bsent a settlement, this case would likely take substantial time and resources to resolve. There would be the completion of additional discovery, briefing and argument of motions for summary judgment and for class certification (and, with class certification, potential appeals) and eventually, perhaps, a lengthy trial followed by further appeals.").

    **2.**  **The Reaction of the Class (*Grinnell* Factor 2).**

Notice of the Settlement and its details has not yet issued to the Class.  The Court should therefore analyze this factor after notice issues and the response of Class Members can be assessed.  At this early stage, this factor does not weigh against the proposed Settlement.  It is neutral.

    **3.**  **Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).**

Although preparing this case through trial would likely require many hundreds (if not thousands) of hours of additional discovery for both sides, the Parties have completed enough discovery to recommend settlement.  The pertinent question raised by this factor is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *Aboud v. Charles Schwab & Co., Inc.*, No. 14 Civ. 2712 (PAC), 2014 WL 5794655, at *3 (S.D.N.Y. Nov. 4, 2014) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement … [but are] an aggressive effort to ferret out facts helpful to the prosecution of the suit."  *Hall v. ProSource Technologies, LLC*, No. 14 Civ. 2502 (SIL), 2016 WL 1555128, at *6 (E.D.N.Y. Apr. 11, 2016).

The Parties' discovery here meets this standard.  As discussed above, Plaintiff's Counsel undertook in-depth pre-litigation investigation, and after litigation commenced worked closely with its expert Dr. Vekker in the analysis of voluminous company payroll records to assess the

scope and likelihood of wage and payroll violations.  Wittels Decl. ¶ 7.   Class Counsel also

undertook significant pre- and post-lawsuit legal research and analysis concerning Plaintiff's

claims.  As a result of this and Class Counsel's participation in a vigorous, all-day mediation

conducted by an experienced employment law mediator, Class Counsel was able to evaluate the

strengths and weaknesses of Class Members' claims and reasonably estimate total potential

damages.

Based on these circumstances, the Parties were well-equipped to evaluate the strengths

and weaknesses of the case.  *Hall v. ProSource Technologies, LLC*, 2016 WL 1555128, at *8

(granting final approval of pre-suit class settlement in wage and hour case); *Hernandez,* 306

F.R.D. 91 at 100, 102 (approving settlement where discovery included "investigation and legal

research into the merits, likely damages, and affirmative defenses, interviewing plaintiffs and

class members, and analyzing documents turned over by defendants"); *Frank v. Eastman Kodak

Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (approving settlement "in relatively early stages of

discovery" where parties had exchanged extensive information pertaining to Defendant's time

and pay practices and where counsel's negotiations had "been in no way collusive").

The assistance of a noted and experienced wage and hour class action mediator further

supports preliminary approval.  "A settlement … reached with the help of third-party neutrals

enjoys a presumption that the settlement achieved meets the requirements of due process."  *In re

Penthouse Executive Club Comp. Litig.*, No. 10 Civ. 1145 (KMW), 2013 WL 1828598, at *1

(S.D.N.Y. Apr. 30, 2013).  Here, as in *Puglisi,* "[a]n experienced class action employment

mediator, Hunter Hughes, assisted the Parties with the settlement negotiations and presided over

a full-day mediation. This reinforces the non-collusive nature of the settlement."  2015 WL

574280, at *2.  *See also Garcia*, 2012 WL 1843785 at *2; *Toure v. Amerigroup Corp.,* 2012 WL 1432302, at *1.

4.  **Plaintiff Faces Real Risks if the Case Proceeds (*Grinnell* Factors 4 and 5).**

Although Plaintiff believes his case is strong, he is nevertheless cognizant of the considerable risks of proceeding to trial.  First, "[l]itigation inherently involves risks."  *Hall*, 2016 WL 1555128, at *7 (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y 1997)).  Indeed, "the primary purpose of settlement is to avoid the uncertainty of a trial on the merits."  *Id.* (quoting *Siler v. Landry's Seafood House–North Carolina, Inc.,* No. 13 Civ. 587, 2014 WL 2945796, at *6 (S.D.N.Y. June 30, 2014)).  In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).

Moreover, there is no guarantee that this case will lend itself to class certification. Specifically, Defendant "would argue that there are individualized questions as to the job duties and payment structure for the class members that makes certification and ultimately trial on a class-wide basis impractical."  *Sierra v. Spring Scaffolding LLC*, No. 12 Civ. 05160, 2015 WL 10912856, at *5 (E.D.N.Y. Sep. 30, 2015).  A "trial on the merits would involve significant risks to Plaintiffs because of the fact-intensive nature of proving liability under federal and state law, and in light of the defenses available to Defendant, which would pose substantial risk as to both liability and damages."  *Hall*, 2016 WL 1555128, at *7 (internal quotations and citations omitted).  Plaintiff would have to overcome, among other things, Good Care's defenses that at least some of Class Members' claims are time-barred, that Defendant did not act willfully, that Plaintiff's claims were mooted by Defendant's Rule 68 offers, that Plaintiff was never entitled to

17

be compensated for wage statement violations, and that Plaintiff and Class Members were paid in accordance with federal and state law.  *See Sierra v. Spring Scaffolding LLC*, 2015 WL 10912856, at *5.

While Plaintiff believes that he could ultimately establish Good Care's liability, Plaintiff's Counsel are both experienced and realistic and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The proposed Settlement alleviates these uncertainties and weighs in favor of preliminary approval.  *See*, *e.g.*, *Hernandez*, 306 F.R.D. 91, 100 (finding that risks as to both liability and damages, including overcoming defendant's defenses and proving willfulness weighed in favor of final approval).

**5. Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).**

The risk of obtaining class certification and maintaining it through trial is also present. The Court has not yet certified the Rule 23 Class or granted permission for Plaintiff to proceed on his FLSA claims on behalf of a collective pursuant to 29 U.S.C. § 216(b).  To obtain those determinations, Plaintiff would likely have to overcome Defendant's defenses that individual questions preclude class certification, that Plaintiff is not an adequate class representative, that the relevant overtime policies were not uniform for all home care workers, and that Plaintiff cannot prove damages.  *See, e.g.*, *Zeller v. PDC Corporation*, No. 13 Civ. 5035 (ARR) (JO), 2016 WL 748894, at *3 (E.D.N.Y. Jan. 28, 2016) (finding that "maintaining a class through trial would be neither simple nor easy"); *Reid v. SuperShuttle Intern., Inc.,* 2012 WL 3288816 at *3 (same).

While Class Counsel believes that the Court would certify the Rule 23 Class and authorize notice to the FLSA collective, both determinations would be reached only after

extensive litigation, including class and expert discovery and extensive briefing.  Further,

Defendant would likely challenge those determinations after the close of discovery.  Risk,

expense, and delay permeate such processes, and the fact that the Settlement eliminates these

costs strongly favors preliminary approval.  *Hall,* 2016 WL 1555128, at *7 (finding that

"[s]ettlement eliminates the risk, expense, and delay inherent in a potential opposition to class

certification."); *Hernandez*, 306 F.R.D. at 100–01 (same).

6.  **Defendant Likely Could Not Withstand a Greater Judgment**
      **(*Grinnell* Factor 7).**

The Parties negotiated heavily over the settlement amount, taking into account

Defendant's ability to pay a settlement that would both compensate proposed Class Members

and allow the agency to remain in business.  Wittels Decl. ¶ 8.  This strongly favors the Court's

approval of the Settlement.  *Chambery v. Tuxedo Junction Inc.*, No. 12 Civ. 06539 (EAW), 2014

WL 3725157, at *7 (W.D.N.Y. July 25, 2014) (settlement strongly favored where defendant's

finances played a large role in reaching settlement and defendant needed to borrow to satisfy

settlement payment).  Further, even if Defendant could withstand a greater judgment, its ability

to do so, "standing alone, does not suggest that the settlement is unfair."  *Hall*, 2016 WL

1555128, at *8 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n. 9); *Hernandez*, 306 F.R.D. at

101 (same).

7.  **The Settlement Amount is Substantial, Even in Light of the Best Possible**
      **Recovery and the Attendant Risks of Litigation  (Grinnell Factors 8 and 9).**

The determination of whether a settlement amount is reasonable "does not involve the

use of a 'mathematical equation yielding a particularized sum.'"  *Bodon v. Domino's Pizza, LLC,*

No. 09 Civ. 2941, 2015 WL 588656, at *6 (E.D.N.Y. Jan. 16, 2015) (quoting *In re Austrian*, 80

F. Supp. 2d at 178).  "[T]he question…is not whether the settlement represents the highest

recovery possible…but whether it represents a reasonable one in light of the many uncertainties the class faces." *Id.* "There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n. 2.  Here, Good Care has agreed to settle this case for a substantial amount: $1,500,000.00.

Class Counsel and Plaintiff have determined that this case presents significant risks that strongly favor compromise.  Given the attendant risks of litigation, the Settlement provides substantial value to each Class Member.  Every Class Member will receive a payment based on their individual aggregate damages for the overtime and late payment claims alleged in the Amended Complaint.   Weighing the benefits of the Settlement against the available evidence and the risks associated with proceeding with litigation, the Settlement amount is reasonable.

*              *              *

The *Grinnell* factors all weigh in favor of issuing preliminary approval of the Settlement. In the event that a substantial number of objectors come forward with meritorious objections, then the Court may reevaluate its determination.  Because the Settlement, on its face, is "fair, adequate, and reasonable, and not the product of collusion," *Frank v. Eastman Kodak Co.*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## V.     THE RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED

Plaintiff seeks to certify the following class under Federal Rule of Civil Procedure 23(e):

All individuals who were employed as Home Health Care Attendants—which includes hourly Home Health Attendants, Personal Care Assistants, Personal Care Assistants Unskilled, Consumer Directed Personal Assistance Program (CDPAP) workers and Live-in Personal Care Attendants—at any time from April 1, 2012 through the date of preliminary approval.

As discussed below, the Rule 23 Class meets all of the certification requirements for class certification for settlement purposes, and Good Care Agency does not oppose provisional certification of the Rule 23 Class for settlement purposes.  Settlement Agreement § 2.2; *see also Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.").

"Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing."  *Puglisi*, 2015 WL 574280, at *2 (collecting cases).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are questions of law or fact common to the class;

(3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires courts to find that:

Questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### A.   Numerosity

"[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiff easily satisfies this requirement because there are over 1,750 Class Members. Wittels Decl. ¶ 36. In addition, "sheer size alone is not the only factor to consider when analyzing numerosity . . . and a finding of numerosity is supported where, as here, the potential class members are of limited financial means, or may fear retaliation by their employer." *Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323, 2013 WL 1040052, at *13 (S.D.N.Y. Mar. 15, 2013) (collecting cases). *See also Hernandez*, 306 F.R.D. 91 at 97 (class is sufficiently numerous such that "joinder of all members is impracticable" at 150 putative members); *Zeller v. PDC Corporation*, 2016 WL 748894, at *3 (class of 77 is sufficiently numerous).

### B.   Commonality

The Rule 23 Class also satisfies the commonality requirement. The commonality requirement is met if "[c]ommon questions predominate over the class." *Hernandez*, 306 F.R.D. at 97 (quoting *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 73 (S.D.N.Y. 2006). "In other words, there need only be a single issue common to all members of the class, as the critical inquiry is whether the common questions lay at the core of the cause of action alleged." *Karic*, 2015 WL 9433847, at *5 (internal quotations omitted); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("Their claims must depend upon a common contention—for

example, the assertion of [unlawful conduct] on the part of the same supervisor.  That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

This case involves numerous common issues.  "All of the class members' claims raise common, if not identical, questions and all arise under the FLSA and NYLL."  *Hernandez*, 306 F.R.D. at 98.  Other common issues include, but are not limited to, (a) whether Good Care maintained true and accurate time records for all hours worked by Plaintiff and Class Members; (b) what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records; and (c) whether Defendant acted willfully or in reckless disregard of its obligations under the law.  *See, e.g.*, *Reid*, 2012 WL 3288816, at *4 (commonality satisfied where, among other allegations, plaintiffs claimed that defendant's compensation policies violated the FLSA and NYLL).

## C.   Typicality

Rule 23 requires that the claims of the representative party be typical of the claims of the class.  This criterion "requires that plaintiffs' claims be typical of the claims of the Class. Typicality has been found when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *Karic,* 2015 WL 9433847, at *5 (internal quotations omitted).

"Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Hernandez*, 306

F.R.D. at 98.  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when Defendant directs "the same unlawful conduct" at the named plaintiff and the class.  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, "[A]ll class members allege that they are owed back pay for [Defendant's] failure to pay required…overtime wages."  *Hernandez*, 306 F.R.D. at 98.  Plaintiff's claims arise from the same factual and legal circumstances that form the bases of all Class Members' claims. Plaintiff claims to have suffered the same injuries as Class Members did – that Good Care failed to properly pay them for the hours worked.  Because Plaintiff's wage and hour claims arise from the same factual and legal circumstances that form the basis of Class Members' claims, Plaintiff satisfies the typicality requirement.  *See Karic*, 2015 WL 9433847, at *5 (granting certification where "[f]irst, plaintiffs and the Class Members all allege that defendants failed to pay them in accordance with the NYLL.  Second, they allege that the manner by which defendants failed to pay plaintiffs and the Class Members demonstrated a company policy and pattern.  Third, plaintiffs claim that they suffered the same injuries suggested by the other Class Members. Irrespective of any differences in the amounts of overtime, wages or maintenance allowances owed, plaintiffs' claims and the claims of the Class Members all stem from defendants' alleged uniformly wrongful conduct.") (internal quotations and citations omitted).

## D.    Adequacy of the Named Plaintiff

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'"  *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237 (WHP), 2007 WL 2872455, at *7 (S.D.N.Y. Sep. 28, 2007)

(quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  *Jackson*, 298 F.R.D. at 165 (quoting Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1768 (3d ed.)) (internal quotation marks omitted).  Plaintiff meets the adequacy requirement because there is no evidence that he has interests that are antagonistic to or at odds with those of the Class Members.   *See Hernandez*, 306 F.R.D. at 98 ("Only a fundamental conflict of interest between a representative and the class or subclass will defeat the adequacy of representation requirement").  Moreover, Plaintiff has contributed significant time and effort to the case by participating in numerous in-person meetings and telephone conferences with Class Counsel, providing Class Counsel with detailed factual information regarding the home care workers' job duties, assisting with preliminary negotiations with Defendant's counsel, and supporting Class Counsel in the mediation.  In sum, Plaintiff has been an excellent class representative.

Plaintiff's Counsel also meets the adequacy requirement of Rule 23(a)(4).  Wittels Law attorneys have extensive experience in successfully prosecuting wage and hour class actions.  The lead attorney prosecuting this case, Steven L. Wittels, was one of the lead trial counsel in the largest class action jury verdict in the history of employment discrimination litigation.  Wittels Decl. ¶ 4.  Mr. Wittels has also served as Class Counsel in dozens of wage and hour, employment discrimination and consumer fraud class actions, generating hundreds of millions of dollars in recoveries to class members.  *Id*. ¶ 3.  Further, Wittels Law has dedicated substantial time and resources, investigating, prosecuting, and settling Plaintiff's and Class Members' claims.  *Id*. ¶¶ 13-14.  The work that Plaintiff's Counsel has performed on this case demonstrates the firm's skill and commitment to representing the interests of the Class.

### E.   Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). That Plaintiff easily meets the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

### 1.   Common Questions Predominate

To establish predominance, Plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/Master Money Antitrust Litig*, 280 F.3d 124, 139 (2d Cir. 2001) (*superseded by statute*). Simply because a defense "may arise and [] affect different class members differently does not compel a finding that individual issues predominate over common ones." *Id.* at 138. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *Hernandez*, 306 F.R.D. at 98–99 (internal citations and quotations omitted).

Here, Class Members' common factual allegations and common legal theory—that Defendant violated state and federal wage and hour laws—predominate over any factual or legal variations among Class Members.  *Id.*  ("The common issues that unite plaintiffs and the class—Defendants' practices of failing to pay minimum wage and overtime—predominate and are subject to the same generalized proof because plaintiffs and the class members shared similar duties and were subject to the same practices."); *Puglisi,* 2015 WL 574280, at *3 (predominance satisfied by plaintiffs' "common factual allegations and common legal theory—that Defendant violated federal and state wage and hour laws by…failing to pay them for premium overtime hours).

### 2.  A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy."  *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").  Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.   Fed. R. Civ. P. 23(b)(3).[3]

---

[3] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in

*Footnote continued on the following page.*

Here, Plaintiff and Class Members have limited financial resources with which to prosecute individual actions, and Plaintiff is unaware of any pending individual lawsuits filed by Class Members arising from the same allegations.  Concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within its jurisdiction.  *See Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036 (HBP), 2014 WL 7495092, at *6 (S.D.N.Y. Dec. 29, 2014) (granting conditional certification where, *inter alia*, "litigation by way of a class action is more economically sensible . . . plaintiffs are unaware of any pending individual lawsuits" and many plaintiffs worked in the district) (internal citations omitted).

Further, employing the class action device here will not only achieve economies of scale for proposed Class Members, but will also conserve judicial resources, prevent inconsistent adjudications of similar issues and claims, and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings.  *See Karic,* 2016 WL 1745037, at *12 (approving class where plaintiffs claimed that "proceeding as a class action will achieve economies of scale for the Class Members and preserve judicial resources by consolidating common issues of fact and law, with the result of preserving public confidence in the system by avoiding inconsistent adjudications," and noting that "there is no indication that the Class Members desire to control their own cases").  A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the claims of Defendant's home care workers.

---

the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.").  Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule."  *In re Zyprexa Prod. Liab. Litig.*, 253 F.R.D. 69, 199 (E.D.N.Y. 2008) (internal quotations and citations omitted).

## VI.   THE FLSA COLLECTIVE SHOULD BE CONDITIONALLY CERTIFIED

Plaintiff seeks to certify the following class under Section 216(b) of the FLSA (the "FLSA Collective"):

> All individuals who worked for Good Care Agency, Inc. as Home Health Care Attendants at any time since April 22, 2013 through the date of preliminary approval.

As discussed below, the FLSA Collective meets all of the certification requirements for class certification for settlement purposes, and Good Care does not oppose provisional certification of the FLSA Collective for settlement purposes only.  Settlement Agreement § 2.2. Section 216(b) of the FLSA provides that plaintiffs must be "similarly situated" in order to pursue an FLSA collective action.  *See* 29 U.S.C. § 216(b).  In considering whether to certify an FLSA collective action, courts in this circuit engage in a two-step process: first, they determine whether similarly situated employees exist and thus should be notified of their right to opt-in, and next, whether "on a fuller record . . . the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs."  *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010). "The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement."  *Kochilas v. National Merchant Services, Inc.*, No. 1:14 Civ. 00311, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (internal citations omitted).  "Because the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement."  *Sierra*, 2015 WL 10912856, at *4 (internal quotations and citations omitted).   As discussed above, all of the applicable *Grinnell* factors weigh in favor of granting final approval of the Settlement Agreement.

For the foregoing reasons concerning the propriety of certifying a class under Fed. R. Civ. P. 23, the Court has ample basis to certify the proposed FLSA Collective for settlement purposes.

## VII.   WITTELS LAW SHOULD BE APPOINTED AS CLASS COUNSEL

Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(g)(1)(B).  The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case."  Fed. R. Civ. P. 23(g), Advisory Committee's note.

Wittels Law meets all of the Rule 23(g) criteria.  Class Counsel has done substantial work identifying, investigating, pursuing, and settling Plaintiff's and Class Members' claims.  Wittels Decl. ¶¶ 13, 14, 39.  Additionally, Wittels Law has substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and the lawyers assigned to this matter are well-versed in wage and hour law, class action law, and are well-qualified to represent the interests of the class.  *Id.* ¶ 39.  Accordingly, Wittels Law should be appointed Class Counsel.

## VIII.   THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE FAIR

The content of the Notice, which is attached to the Wittels Declaration as Exhibit B, fully

complies with due process, Federal Rule of Civil Procedure 23, and 29 U.S.C. § 216(b).

Pursuant to Rule 23(c)(2)(B), notice must provide:

> [T]he best notice practicable under the circumstances, including individual notice
> to all members who can be identified through reasonable effort.  The notice must
> clearly and concisely state in plain, easily understood language:

> (i)      the nature of the action;
> (ii)     the definition of the class certified;
> (iii)    the class claims, issues, or defenses;
> (iv)     that a class member may enter an appearance through an attorney if the
>          member so desires;
> (v)      that the court will exclude from the class any member who requests
>          exclusion;
> (vi)     the time and manner for requesting exclusion; and
> (vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Here, the Notice satisfies each of these requirements.  The Notice informs its recipients

about how the members of the Rule 23 Class can exclude themselves from the Settlement, how

the members of the Rule 23 Class and the FLSA Collective can object to the Settlement, and the

consequences of inaction.  The Notice also describes the material terms of the Settlement,

informs Class Members about the allocation of attorneys' fees, and provides specific information

regarding the date, time, and place of the final approval hearing.  Courts in this district have

approved class notices even when they provided only general information about a settlement.

*See, e.g. Toure v. Amerigroup Corp*., 2012 WL 1432302, at *2 ("class notice need only describe

the terms of the settlement generally") (internal quotations omitted).  The detailed information in

the Notice far exceeds this bare minimum and fully complies with the requirements of Rule

23(c)(2)(B).  In fact, the Notice is based on the Federal Judicial Center's Illustrative Forms of Class Action Notices.[4]

The Settlement Agreement provides that the Notice will be mailed and/or emailed by the Claims Administrator to the last known address of each Class Member within 14 days of preliminary approval.  Settlement Agreement ¶ 2.6 (C).  The Settlement Agreement provides a process by which the Claims Administrator can obtain an updated address for any Class Member whose notice is returned as undeliverable, and to attempt re-mailing and/or emailing.  *Id.* ¶ 2.6 (D, E).  The Class Administrator will attempt up to two re-mailings per Class Member.  *Id.* ¶ 2.6 (D).  The Class Administrator will also mail and email the Reminder Postcard to the Class Members who have not returned a Claim Form within 45 days of the initial mailing.  *Id.* ¶ 2.6 (G).  In addition, Class Counsel will post links to the Notice on the homepage of Class Counsel's website as well as a subpage on Class Counsel's website containing a brief description of the Litigation and directing viewers to examples of the Notice and how to contact the Claims Administrator.  *Id.* ¶ 2.6 (F).  As discussed above, the Notice contains information about how the members of the Rule 23 Class can exclude themselves from the Settlement, and how the members of the Rule 23 Class and the FLSA Collective can object to the Settlement.  Class Members will have 60 days from the date of mailing to submit a claim form, opt-out, or object to the Settlement.  *Id.* ¶¶ 1.4, 2.7 (A), 2.8 (A).  The Claims Administrator will mail Class Members their payments within 21 days after the Effective Date.  *Id.* ¶ 3.6 (C).

---

[4] *Available at:*
http://www.fjc.gov/public/home.nsf/autoframe?openform&url_l=/public/home.nsf/inavgeneral?openpage&url_r=/public/home.nsf/pages/376.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court grant

Plaintiff's Motion for Preliminary Approval of Settlement and enter the proposed Order.

Dated:  March 27, 2017
       Armonk, New York

**WITTELS LAW, P.C.**

By:  /s/ Steven L. Wittels
      Steven L. Wittels (SW-8110)
      J. Burkett McInturff (JM-4564)
      Tiasha Palikovic (TP-5697)

      18 HALF MILE ROAD
      ARMONK, NEW YORK 10504
      Telephone: (914) 319-9945
      Facsimile:   (914) 273-2563
      slw@wittelslaw.com
      jbm@wittelslaw.com
      tpalikovic@wittelslaw.com

      *Lead Counsel for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the following documents in support of

Plaintiff's Motion for Preliminary Approval of Class Action Settlement, and Related Relief via ECF

this 27th day of March, 2017 upon the following counsel of record:

Attorneys for Defendant

Eve I. Klein
eiklein@duanemorris.com
Katelynn M. Gray
kgray@duanemorris.com
Duane Morris LLP
1540 Broadway
New York, NY 10036

Irene Sinayskaya
Irene@nyjusticelaw.com
Law Offices of Irene Sinayskaya
2652 Coney Island Avenue
Brooklyn, NY 11223

     /s/  Steven L. Wittels
       Steven L. Wittels