# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISKANDER RASULEV,<br><br>                              Plaintiff,<br><br>v.<br><br>GOOD CARE AGENCY, INC.,<br><br>                              Defendant. | Case No.: 16 Civ. 1993 (LDH) (CLP) |

# FINAL SETTLEMENT AGREEMENT AND RELEASE

This Final Settlement Agreement and Release (the "Agreement") is entered into by and between Plaintiff (as hereinafter defined) and the class of individuals he seeks to represent (as hereinafter defined) and Defendant (as hereinafter defined) (together, "the Parties").

## RECITALS

WHEREAS, the Parties have agreed to the settlement of all claims encompassed by Plaintiff's First Amended Class and Collective Action Complaint, ECF No. 41 (the "Complaint");

WHEREAS, the purpose of this Agreement is to settle fully and finally all claims between Plaintiff and Defendant and any claims as amongst the Parties as of the date of this Agreement subject to court approval, including all claims asserted in the Litigation (as hereinafter defined);

WHEREAS, Plaintiff and Defendant agreed to participate at a mediation regarding the possibility of a voluntary resolution of the claims asserted in the Litigation and agreed to toll the limitations period on the claims at issue in the Litigation, and entered into a confidentiality agreement to facilitate and exchange information and payroll data;

WHEREAS, the Parties engaged in targeted discovery including, but not limited to, analyzing time and payroll records of Plaintiff and Class Members (as hereinafter defined);

WHEREAS, on December 22, 2016, the Parties participated in an all-day mediation at the Atlanta offices of Hunter Hughes, Esq., a mediator experienced in wage and hour class and collective actions.  At the conclusion of the mediation session, with the help of Mr. Hughes, the Parties reached a memorandum of understanding resulting in this Agreement;

WHEREAS, Defendant denies that it violated any statute, law, regulation or rule of law, or is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation.  Nonetheless, without admitting or conceding any fault, wrongdoing, liability or damages, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the

Litigation;

WHEREAS, Class Counsel analyzed and evaluated the merits of the claims made against Defendant in the Litigation, obtained and reviewed documents relating to Defendant's compensation policies, and analyzed payroll data, and based on their analysis and evaluation of a number of factors, recognizing the substantial risks of continued litigation with respect to certain claims, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable to the Plaintiff and Class Members, and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Class Members;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

**1.     DEFINITIONS**

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1     **Additional Claims Subclass.** "Additional Claims Subclass" shall mean current and former employees of Defendant during the Covered Period who have claims for alleged late payment of wages under the New York Labor Law ("NYLL"), alleged failure to pay wages in accordance with the New York Wage Parity Law, alleged failure to pay any spread of hours purportedly due under the NYLL, and alleged failure to provide proper wage notices under the Wage Theft Prevention Act during the Covered Period.

1.2     **Agreement**. "Agreement" shall mean this Final Settlement Agreement and Release.

1.3     **Authorized Claimant.** "Authorized Claimant" means Plaintiff, and any Class Member or the authorized legal representative of such member.

1.4     **Bar Date.** "Bar Date" means the date by which any Class Member must file a Claim Form, exclude themselves from the settlement, or object to the settlement. Subject to the Court's approval, the Bar Date shall be (1) no later than sixty (60) days after the initial mailing of the Notice by the Settlement Claims Administrator, or (2) if Class Members did not receive the Notice or were unable to file the Claim Form within sixty (60) days due to change of address, military service, hospitalization or other extraordinary circumstances, an additional twenty (20) days will be given to such Class Members to file a Claim Form.

1.5     **Claims Administrator.** "Claims Administrator" shall mean, the entity selected by the Parties to provide notice to the Class and administer payment of the settlement to Class Members.

1.6     **Claim Form.** "Claim Form" means the form, a copy of which is attached to the Notice that Additional Claims Subclass Members must sign and return postmarked, emailed, or faxed to the Claims Administrator by the Bar Date.

1.7     **Class Counsel.** "Class Counsel" shall mean Wittels Law, P.C.

1.8  **Class Members.**  "Class Members" shall mean all FLSA Collective Members and all Rule 23 Class Members, as defined below.

1.9  **Court.**  "Court" shall mean the United States District Court for the Eastern District of New York.

1.10  **Covered Period.**  "Covered Period" shall mean the period from April 1, 2012 through the date the Court issues the Order Granting Preliminary Approval.

1.11  **Defendant.** "Defendant" shall mean Good Care Agency, Inc.

1.12  **Defendant's Counsel.**  "Defendant's Counsel" shall mean Duane Morris LLP and Law Offices of Irene Sinayskaya.  For the purposes of providing any notices required under this Agreement, Defendant's Counsel shall refer to Eve I. Klein, Esq. and Katelynn M. Gray, Esq. of Duane Morris LLP., and Irene Sinayskaya, Esq. of Law Offices of Irene Sinayskaya.

1.13  **Effective Date.**  The "Effective Date" is the date on which this Agreement becomes effective, which shall mean thirty (30) days following the Court's Order Granting Final Approval of the settlement if no appeal is taken from the final approval order, and if an appeal is taken from the Court's Order Granting Final Approval of the settlement, then the date the Court enters a Final Order and Judgment after resolving any appeals.

1.14  **Escrow Account.**  "Escrow Account" shall mean the interest-bearing account(s) created and controlled by the Claims Administrator.

1.15  **Fairness Hearing.**  "Fairness Hearing" shall mean the hearing on the motion for judgment and final approval.

1.16  **Final Order and Judgment:**  "Final Order and Judgment" shall mean the final order and judgment issued by the Court as further set forth in Section 2.5.

1.17  **FLSA Collective Members.**  "FLSA Collective Members" shall be defined as all individuals who worked for Defendant as Home Health Care Attendants which term shall include hourly Home Health Attendants, Personal Care Assistants, Personal Care Assistants Unskilled, CDPAPs and Live-in Personal Care Attendants, at any time since April 22, 2013 through the date of preliminary approval.

1.18  **Individual Settlement Amount.** "Individual Settlement Amount" shall mean the amount payable to each Authorized Claimant pursuant to Section 3.6 of this Agreement.

1.19  **Litigation.** "Litigation" shall mean the claims represented in the Complaint alleging violations of the FLSA and wage and hour laws of New York, and captioned *Iskander Rasulev. v. Good Care Agency, Inc*., 16 Civ. 1993 (LDH) (CLP).

1.20  **Net Settlement Fund**.  "Net Settlement Fund" shall mean the remainder of the Settlement Fund after deductions for the settlement administration fees and costs as described in Section 2.1, mediation and expert fees and costs, Court-approved service award to Plaintiff as described in Section 3.4, Court-approved attorneys' fees and costs as described in Section 3.3, any fees associated with investing and liquidating the Settlement

3

Fund as described in Section 3.2, and any taxes incurred directly or indirectly as a result of investing the Settlement Fund and a $10,000 Reserve Fund to cover errors and omissions.

1.21   **Notice.** "Notice" shall mean the notice of settlement of the class/collective action lawsuit and fairness hearing.

1.22   **Overtime & FLSA Late Payment Subclass: "Overtime & FLSA Late Payment Subclass"** shall mean current and former employees of Defendant during the Covered Period who have claims of alleged failure to pay overtime wages under the FLSA and/or NYLL and for claims related to the alleged untimeliness of payments under the FLSA and/or NYLL.

1.23   **Order Granting Final Approval.** "Order Granting Final Approval" shall mean the final Order entered by the Court after the Fairness Hearing.

1.24   **Order Granting Preliminary Approval.** "Order Granting Preliminary Approval" shall mean the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing notice to Class Members, and the time period for opt-outs, objections, and submission of Claims Forms.

1.25   **Parties.** "Parties" shall mean Plaintiff and Defendant.

1.26   **Plaintiff.** "Plaintiff" shall refer to Plaintiff Iskander Rasulev and shall also include any and all representatives, heirs, administrators, executors, beneficiaries, agents, and assigns of such individual, as applicable and without limitation.

1.27   **Releasees.** "Releasees" shall mean Defendant, as defined herein, and any related present and former parent companies, subsidiaries, related or affiliated companies, and their respective shareholders, officers, directors, employees, members, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them.

1.28   **Reserve Fund**. "Reserve Fund" shall mean the $10,000 reserved from the Settlement Fund identified above to address errors and omission in the calculation of Class Members' individual shares of the settlement, including but not limited to (a) claims from individuals claiming to be Class Members but not identified as such by Defendant and (b) Class Members' challenging their share of the Net Settlement Fund.

1.29   **Rule 23 Class; Rule 23 Class Members.** "Rule 23 Class" shall mean individuals who have been employed by Defendant as Home Health Care Attendants, which term shall include hourly Home Health Attendants, Personal Care Assistants, Personal Care Assistants Unskilled, CDPAPs and Live-in Personal Care Attendants, at any time during the Covered Period. "Rule 23 Class Members" are employees within the Rule 23 Class.

1.30   **Settlement Fund.** "Settlement Fund" shall mean the total settlement fund of One Million, Five Hundred Thousand Dollars and No Cents ($1,500,000.00), plus any interest accrued as provided in Section 3.2.

**2. APPROVAL AND CLASS NOTICE**

2.1 **Claims Administrator's Responsibilities.** The Claims Administrator shall be responsible for mailing the Notice, calculating Class Members' share of installments from the Net Settlement Fund (pursuant to the formulas outlined in Section 3.6), and cutting and mailing checks to Authorized Claimants as provided herein. The Parties agree to cooperate with the Claims Administrator and assist it in any way possible in administering the settlement described herein as approved by the court. The Claims Administrator shall carry out the terms of the Settlement Agreement agreed to by the parties, including, but not limited to, distribution of required notices and payments to the company's employees and answer questions posed by employees during the administration process. The parties shall enter an agreement with the Claims Administrator that details the duties and responsibilities of the administrator and the fee for the same. The Claims Administrator's fees shall be paid from the Settlement Fund as described below.

2.2 **Preliminary Approval by the Court.** On or before February 28, 2017, unless otherwise agreed, Plaintiff anticipates submitting to the Court a motion for preliminary approval of the class action settlement and collective action ("Preliminary Approval Motion"). In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Order and Judgment" that will, among other things: (a) approve the settlement as fair, adequate and reasonable; (b) incorporate the terms of the Release, as described herein; (b) dismiss the Litigation with prejudice; (d) award a service award to Plaintiff; and (e) award Class Counsel attorneys' fees and costs, as more fully set forth herein.

2.3 **The Preliminary Approval Motion**. In connection with the Preliminary Approval Motion, Plaintiff will submit to the Court, among other things: (a) proposed notice of settlement of the class/collective action lawsuit and fairness hearing, including a claim form and transmittal envelope, (b) a reminder notice, and (c) a proposed Order Granting Preliminary Approval. Plaintiff will provide to Defendant the opportunity to review the proposed Order Granting Preliminary Approval, the Notice and Claim Form, the transmittal envelope, and the reminder notice prior to filing it and should the parties disagree on content, after good faith efforts at resolution, any remaining issues will be promptly presented to the Court for resolution. The Parties will work together diligently and in good faith to obtain preliminary and final approval expeditiously. The Preliminary Approval Motion will seek the setting of dates for FLSA opt-ins, Rule 23 Class Members to opt-out, objections, submission of Claims Forms and a Fairness Hearing. Defendant will not oppose the Preliminary Approval Motion.

2.4 **Denial of Preliminary Approval.** If the Court denies the Motion for Preliminary Approval, then the Parties agree to jointly seek reconsideration of the ruling or seek Court approval of a renegotiated settlement. Should reconsideration and/or should the Parties' attempt to secure Court approval of a renegotiated settlement be denied, the case will proceed as if no settlement had been attempted. In such a case, the Parties will negotiate and submit for Court approval a revised case management schedule.

2.5 **Final Order and Judgment from the Court.** Plaintiff will seek to obtain from the Court, as a condition of settlement, a Final Order and Judgment in a form to be agreed

upon by the Parties. The proposed Final Order and Judgment will, among other things: (a) finally certify the Rule 23 Class and FLSA Collective for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement as fair, adequate, reasonable, and binding on all Class Members who have not timely opted out pursuant to Section 2.7, (d) dismiss the Litigation with prejudice, (e) enter an order permanently enjoining all Class Members who do not opt out from pursuing and/or seeking to reopen claims that have been released by this Agreement, (f) award Class Counsel attorneys' fees and costs, (g) award a service awards to Plaintiff as more fully set forth herein and (h) incorporate the terms of this Agreement. Defendant will not oppose the application for the Final Order and Judgment.

2.6  **Class and Collective Action Notice and Claim Form.**

(A)  The Notice and Claim Form shall be consistent with the guidelines of the Federal Judicial Center, and shall be both in English and in the employee's native language (likely Russian). Claims Forms may be returned to the Claims Administrator by email, fax, or mail.

(B)  Within 14 days after preliminary approval, Defendant will provide the Claims Administrator with a list (the "Class List"), in electronic form, of the (1) names, (2) last known addresses, including email addresses (if known) (3) last known telephone numbers, (4) social security numbers, (5) employee identification numbers, and (6) native language. The Claims Administrator shall not provide this list to Class Counsel.

(C)  Within fourteen (14) days of the date on which Defendant provides the Class List, the Claims Administrator shall mail, via First Class United States mail, postage prepaid, and email (if known), the Notice and Claim Form to all Class Members using each individual's last known address and email (if known) as recorded in Defendant's records. In advance of the Claims Administrator's mailing of any Notice, counsel for the Parties shall negotiate in good faith (1) the content of the Notice and Claim Form and transmittal envelope, (2) the content of the email which shall attach the Notice, (3) a list of frequently asked questions and answers ("FAQs") to be used by the Claims Administrator in responding to inquiries from Class Members following the issuance of the Notice and Claim Form, (4) the Claims Administrator's recorded message to callers, and (5) the content of the reminder notice. If the Claims Administrator determines that it cannot respond to a Class Member's inquiry because the inquiry falls outside of the scope of the FAQs, then the Claims Administrator shall contact counsel for the Parties simultaneously by email and request guidance. Counsel for the Parties shall then have twenty four (24) hours to communicate with each other and to address in good faith any issues raised by the Class Member's inquiry. Thereafter, the Claims Administrator shall communicate the agreed-upon response to the Class Member. If neither Class Counsel nor Defendant's Counsel timely responds to an issue raised by a Class Member's inquiry, then the Claims Administrator shall use its professional judgment in responding to the Class Member's inquiry and shall promptly advise counsel for the Parties via email of the response.

(D)  The Claims Administrator shall take all reasonable steps to obtain the correct address of any Class Member for whom the Notice is returned by the post office as undeliverable, including using social security numbers to obtain better address information, and shall attempt re-mailings as described below.  Defendant's Counsel and Class Counsel have the right to make reasonable inquiries and receive information from the Claims Administrator related to the claims administration process.

(D)  If any Notices are returned to the Claims Administrator as undeliverable, the Claims Administrator will attempt up to two re-mailings per Class Member.  The Claims Administrator shall, within 3 calendar days after the first mailing of the Notice, notify Class Counsel and Defendant's Counsel of the precise date of the Bar Date.  However, to the extent one or more mailings is unsuccessful with regard to a specific class member, the Bar Date for such class member will run from the date of the first mailing to such class member that was not returned as "undeliverable."

(E)  In the event that a Notice is returned to the Claims Administrator with a forwarding address for the recipient, the Claims Administrator shall re-mail the Notice to that address, and the forwarding address will be deemed the address for that Class Member.  In the event that subsequent to the first mailing the Notice is returned to the Claims Administrator without a forwarding address (i.e., the address is no longer valid and the envelope is marked "Return to Sender"), the Claims Administrator shall complete a standard skip trace in an effort to ascertain the current address of the particular Class Member in question and, if such address is ascertained, the Claims Administrator will re-send the Notice; if no updated address is ascertained for that Class Member, the Claims Administrator will re-send the Notice to the last known address.  For those Class Members who are re-sent the Notice, the Bar Date shall be extended another twenty (20) days from the first or second (if made) re-mailing.

(F)  The Parties agree that Class Counsel will post links to a sample Notice and Claim Form on a the homepage of Class Counsel's website as well as a subpage on Class Counsel's website containing a brief description of the Litigation and directing viewers to examples of the Notice and Claim Form and how to contact the Claims Administrator.

(G)  Forty-five (45) days after the initial mailing of the Notice and Claim Form by the Settlement Claims Administrator, the Claims Administrator will send, to the extent the information is available, by first class mail and email to Class Members who have not returned a valid Claim Form a reminder notice.  The date for reminder mailings will not be extended by any re-mailings of the Notice.

2.7  **Rule 23 Class Member Opt-Out.**

(A)  Any Rule 23 Class Member may request exclusion from the class by "opting out." Any Rule 23 Class Member who chooses to do so must mail, email, or fax a written, signed statement to the Claims Administrator that he or she is opting out of the settlement ("Opt-Out Statement").  The Opt-Out Statement must contain

7

the name, address and telephone number of the Rule 23 Class Member to be valid. It must also contain the words "I elect to exclude myself from the class settlement in *Iskander Rasulev. v. Good Care Agency, Inc.*" in order to be valid. To be effective, such Opt-Out Statement must also be sent via mail and postmarked by the Bar Date, or returned by e-mail or fax to the Claims Administrator prior to midnight, Eastern Standard Time, on the Bar Date

(B) The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives, and note the date and time of any emailed or faxed Opt-Outs, and shall serve copies of each Statement by email on Class Counsel and Defendant's Counsel not later than 3 calendar days after receipt thereof. The Claims Administrator shall, within 3 calendar days of the end of the Bar Date, send by email a final list of all Opt-Out Statements to Class Counsel and Defendant's Counsel. The Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements, as well as all emailed or faxed Opt-Outs, in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(C) Any Rule 23 Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement.

2.8 **Objections to Settlement by Rule 23 Class Members.**

(A) Rule 23 Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Claims Administrator as well as to Class Counsel and Defendant's Counsel by the Bar Date. The statement must contain the name, job title with Defendant, address and telephone number of the Rule 23 Class Member to be valid. It must also contain the words "I object to the settlement in *Iskander Rasulev. v. Good Care Agency, Inc*." and set forth both the factual and legal reasons for the objection. Any reasons not included in the written objection will not be considered. The Claims Administrator shall stamp the date received on the original objection. Class Counsel shall file the date-stamped originals of any and all objections with the Clerk of Court within 10 calendar days after the Bar Date.

(B) A Class Member who files objections to the settlement ("objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector at his/her own expense. An objector who wishes to appear at the Fairness Hearing must also file and deliver his/her written objection with the Clerk of Court, in addition to serving his/her objection on the Claims Administrator and Class Counsel and Defendant's Counsel. The objector must include in the written objection his or her intention to appear at the Fairness Hearing at the time he/she submits his/her written objections by including the words, "I intend to appear at the Fairness Hearing." If a Class Member intends to object to the Settlement through retained counsel, then that counsel must file with the Court and serve on the Claims Administrator and Class Counsel and

8

        Defendant's Counsel a notice of appearance no later than 60 calendar days after the Bar Date, and include a statement of whether counsel intends to appear at the Final Approval Hearing. An objector may withdraw his/her objections at any time. No Class Member or counsel for an objector may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with all procedures provided in this section and the previous sections. Any Class Member who has requested exclusion may not submit objections to the settlement.

  (C)    The Parties may file with the Court written responses to any objections no later than 3 calendar days before the Fairness Hearing, or any date ordered by the Court.

2.9    **Motion for Judgment and Final Approval.**  No later than 7 calendar days before the Fairness Hearing, Plaintiff will submit a motion for judgment and final approval. The Fairness Hearing shall be held at the Court's convenience.

2.10    **Entry of Judgment.**  At the Fairness Hearing, Class Counsel will request that the Court, among other things, (a) finally certify the class for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement as fair, adequate, reasonable, and binding on all Class Members, (d) dismiss the Litigation with prejudice, (e) enter an order permanently enjoining all Class Members from pursuing and/or seeking to reopen claims that have been released by this Agreement, (f) incorporate the terms of this Agreement in the order, (g) award a service award to Plaintiff as more fully set forth herein, and (g) award Class Counsel attorneys' fees and costs.

2.11    **Effect of Failure to Grant Final Approval.**  In the event the Court does not grant final approval in accordance with this Agreement, or such judgment does not become final as defined herein, the Parties agree to proceed as follows. The Parties jointly agree to (a) seek reconsideration of the decision denying entry of judgment, or (b) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement. Defendant will not oppose Plaintiff's application for a service award, and attorneys' fees, and costs, or appeal of denial of such items in the event not awarded as requested. In the event any reconsideration is denied, or a mutually-agreed-upon settlement is not approved:

  (A)    The Litigation will proceed as if no settlement had been attempted. In that event, Defendant retains the right to contest whether this Litigation should be maintained as a class action or collective action and to contest the merits of the claims being asserted by Plaintiff in this action.

  (B)    Class Counsel and/or the Court will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement. Such notice shall be emailed (if known) and mailed by the Claims Administrator via First Class United States Mail, postage prepaid, to the last address used by the Claims Administrator in mailing the Notice.

9

    (C)    Upon notification from counsel for the Parties that the Agreement did not receive final approval, the Claims Administrator shall return to Defendant within 10 days the entire amount of the Settlement Fund that has been deposited, with any interest accrued thereon. If the Agreement does not receive final approval, the parties will request that the Court determine the responsibilities of the parties for payment of: (1) settlement administration fees and costs as described in Section 2.1; (2) mediation fees, and (3) expert fees and costs. Any fees associated with investing and liquidating the Settlement Fund as described in Section 3.2, and any taxes incurred directly or indirectly as a result of investing the Settlement Fund shall be paid by Defendant, which shall retain all principal, proceeds and interest from the Settlement Fund.

2.12  **Claims' Administrator's Fees.** The Claims Administrator's fees incurred shall be paid from the Settlement Fund as described below, provided that the Court enters a Final Order and Judgment.

**3.  SETTLEMENT TERMS**

3.1  **Settlement Fund and Payment.**

    (A)    Defendant agrees to pay One Million, Five Hundred Thousand Dollars and No Cents ($1,500,000.00), which shall resolve and satisfy: (a) all amounts to be paid to Authorized Claimants; (b) a Court-approved service award to Plaintiff; (c) the Claims Administrator's fees; (d) Court-approved attorneys' fees and costs and expenses (including expert fees and mediation costs); (e) any fees associated with investing and liquidating the Settlement Fund, and (f) any taxes incurred directly or indirectly as a result of investing the Settlement Fund to the extent not covered by accrued interest. Defendant will not be required to pay more than One Million, Five Hundred Thousand Dollars and No Cents ($1,500,000.00) under this Agreement.

    (B)    Provided that a Final Order and Judgment is entered, the Settlement Fund shall be allocated to Class Members in two subclasses as follows:

        (i)    *Overtime & FLSA Late Payment Subclass*: The sum of six hundred thousand dollars and no cents ($600,000.00) will be paid to the Overtime & FLSA Late Payment Subclass for claims of alleged failure to pay overtime wages under the FLSA and/or NYLL and for claims related to the alleged untimeliness of payments under the FLSA and/or NYLL during the Covered Period. This payment is inclusive of alleged unpaid overtime and liquidated damages. Such payment shall be made via check mailed to each Class Member, who has been determined through expert review that they have claims for overtime or late wage payments, in their respective proportionate shares to the sum of $600,000. The parties shall agree on a reasonable minimum payment. The Claims Administrator shall send out each payment within seven (7) days after the Effective Date, and said Overtime & FLSA Late Payment Subclass member shall not be required to submit a claim form in order to receive payment. Any Class Member who cashes the settlement check shall be opting into the action

10

under the FLSA, waiving and releasing any FLSA overtime and timeliness of payment claims, and waiving and releasing any NYLL claim for overtime. The employer's share of payroll taxes shall come out of the $600,000. The proceeds from any check that is not cashed pursuant to this paragraph by any employee shall revert to Defendant.

(ii) *Additional Claims Subclass*: The sum of three hundred and eighty five thousand dollars and no cents ($385,000.00), will be paid to the Additional Claims Subclass for alleged late payment of wages under the NYLL, alleged failure to pay wages in accordance with the New York Wage Parity Law, alleged failure to pay any spread of hours purportedly due under the NYLL, and alleged failure to provide proper wage notices under the Wage Theft Prevention Act during the Covered Period, provided that the Additional Claims Subclass Member files a valid Claim Form. The Notice and Claim Form shall be sent to Additional Claims Subclass Members and those who do not opt out shall waive all claims in the Litigation under New York law, regardless of whether they file a valid Claim Form or cash a settlement check. The employer's share of payroll taxes shall come out of the $385,000. The proceeds from any check that is not cashed pursuant to this paragraph by any employee shall revert to Defendant.

(iii) Class Members may be members of both subclasses specified in paragraph 3.3(B)(i) and (ii) above.

(iv) The sum of twenty-nine thousand dollars and no cents ($29,000.00) will be paid from the Settlement Fund to cover expenses related to the settlement process, including the expert fees, attorneys' costs and expenses and the mediator fee; any amounts in excess of that amount will come out of the $385,000 sum allocated to the Additional Claims Subclass in paragraph 3.1(B)(ii).

(v) The sum of twenty-one thousand dollars and no cents ($21,000.00) will be paid from the Settlement Fund to cover the Claims Administrator's fees and all fees associated with retention of the Claims Administrator, including Notice costs; any sums in excess of $21,000 shall come out of the $385,000 sum allocated to the Late Payment Subclass in paragraph 3.1(B)(ii).

3.2 Defendant shall make the following payments into an interest bearing Escrow Account established by the Claims Administrator:

(1) $250,000.00 within 15 days after the court grants preliminary approval of the settlement; and

(2) $1,250,000.00 by July 1, 2017, provided a Final Order and Judgment has been entered by the Court. If Final Order and Judgment has not been entered by July 1, 2017, the remaining $1,250,000.00 shall be deposited within 15 days of its entry.

11

    (3) Interest, if any, from the interest bearing Escrow Account will become part of the Net Settlement Fund and be held by the Claims Administrator in escrow.

3.3 **Settlement Amounts Payable as Attorneys' Fees and Costs.**  Prior to the Fairness Hearing, Class Counsel shall petition the Court for no more than 30% of the Settlement Fund as an award of attorneys' fees. In addition, Class Counsel shall also seek reimbursement of reasonable litigation costs and expenses from the Settlement Fund. Defendant will not oppose such applications.  The Claims Administrator shall pay Class Counsel the sum approved by the Court for attorneys' fees, costs and expenses from the Settlement Fund within 21 days of the Effective Date.

3.4 **Service Award to Plaintiff.**  Plaintiff will apply to the Court to receive no more than Fifteen Thousand Dollars and No Cents ($15,000.00) from the Settlement Fund for services rendered to Class Members.  Defendant will not oppose such application.  The Claims Administrator shall pay Plaintiff the sum approved by the Court for a service award from the Settlement Fund within 21 days of the Effective Date.

3.5 **Class Counsel's Right to Appeal.**  Class Counsel reserves the right to appeal any decisions denying their application for a full service award to Plaintiff, their petition to the Court for no more than 30% of the Settlement Fund as an award of attorneys' fees, as well as any application for reimbursement of reasonable litigation costs and expenses from the Settlement Fund.  Defendant will not oppose any such appeals.

3.6 **Distribution to Authorized Claimants.**

  (A) Authorized Claimants will be deemed eligible for a payment hereunder.

    An Authorized Claimant's Individual Settlement Amount shall be that Authorized Claimant's proportionate share of the Net Settlement Fund as determined through the review of Defendant's payroll records by Dr. Alexander Vekker.  Dr. Vekker's calculations regarding Authorized Claimants' proportionate shares of the Net Settlement Fund will be utilized, subject to concerns raised by Plaintiff or Defendant regarding any calculation errors.

  (B) Defendant and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.7.  Defendant agrees that it is its obligation to provide to the Claims Administrator the W4 information it has available for each Class Member.  Defendant agrees to provide the W-4 information to the Claims Administrator that is necessary to identify or pay Class Members so that the Claims Administrator can make the required tax deductions before payments are made to Class Members, and to notify the appropriate taxing authorities.

  (C) The Claims Administrator shall mail to each Authorized Claimant their distributable shares from the Net Settlement Fund within 21 days of the Effective Date.  The Claims Administrator shall use reasonable efforts to make an additional mailing to Authorized Claimants whose checks are returned because of

incorrect addresses for each distribution. Such efforts shall include using social security numbers to obtain better address information. Any additional efforts undertaken shall be in the sole discretion of the Claims Administrator. The Claims Administrator shall not utilize or disclose information received in connection with this Agreement except in connection with executing the terms of this Agreement.

(D) All payments to Authorized Claimants made pursuant to this Agreement shall be deemed to be paid to such Authorized Claimants solely in the year in which such payments actually are received by Authorized Claimants. It is expressly understood and agreed that the receipt of such settlement payments will not entitle any Authorized Claimant to additional compensation or benefits under any of Defendant's bonus or other compensation or benefit plans or agreements in place during the Covered Period. It is the intent of this Agreement that the settlement payments provided for in the Agreement are the sole payments to be made by Defendant to the Class Members, and that the Class Members are not entitled to any new or additional compensation or benefits as a result of having received the settlement payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the Covered Period).

3.7 **Taxability of Settlement Payments.**

(A) For tax purposes, all payments to Authorized Claimants shall be allocated 50% to alleged back wages, with the balance divided between alleged interest and liquidated damages. Payments treated as alleged back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the IRS and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as liquidated damages and interest shall be made without withholding and shall be reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.3 shall be made without withholding. Class Counsel will receive a Form 1099 for this payment. Any service award pursuant to Section 3.4 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

(B) Any tax responsibility for the non-wage portion of the payments to Authorized Claimants shall not be Defendant's responsibility.

(C) Plaintiff acknowledges and agrees that he will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement. Plaintiff, on behalf of Class Members, acknowledges and agrees that he has not relied upon any advice from Defendant as to the taxability of the payments received pursuant to this Agreement. Plaintiff individually agrees to indemnify Defendant for any determination by a taxing authority, agency or court that any additional income or employment taxes are due on any payments he received pursuant to this Agreement.

3.8 **Release**

    (A) **Release of Claims.** Upon the Effective Date, the Plaintiff, and each Rule 23 Class Member who does not timely opt out, on his or her behalf, and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges the Releasees, from all New York state law claims asserted in the Litigation. This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, interest, and attorneys' fees and costs. In addition, each Overtime & FLSA Late Payment Subclass member who negotiates the check paid pursuant to Section 3.1(B) specifically and affirmatively releases Defendant from any FLSA claims asserted in the Litigation, and attorneys' fees and costs related to such claims.

    (B) **Release of Fees and Costs for Settled Matters.** Except as provided for in this agreement, Class Counsel and Plaintiff, on behalf of Class Members, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendant for attorneys' fees or costs associated with Class Counsel's representation of Plaintiff and the class in the Litigation.

    (C) **No Assignment.** Class Counsel and Plaintiff, on behalf of Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any interest or claim in this Litigation, or any portion thereof.

    (D) **Non-Admission of Liability.** By entering into this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Plaintiff and/or Class Members, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendant in no way admits to the suitability of this case for class or collective-action litigation other than for purposes of settlement. Rather, Defendant enters into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiff and the Class Members. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the factual allegations in any and all Complaints filed in the Litigation; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

3.9 **Miscellaneous**

    (A) **No Retaliation.** Defendant agrees not to retaliate against any individuals for their participation in this settlement or litigation.

14

(B) **Cooperation Among the Parties; Further Acts.** The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's preliminary and final approval of this Agreement and all of its terms. Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

(C) **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

(D) **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Plaintiff and the Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

(E) **Arm's Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

(F) **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

(G) **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

(H) **Severability.** Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect. .

(I) **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

(J) **Continuing Jurisdiction.** The Parties agree that the Mediator Hunter Hughes shall retain jurisdiction to resolve any and all disputes between the Parties' relating to the settlement of this Litigation up to the date of submission of the Motion for Preliminary Approval. The Court shall retain jurisdiction over the interpretation and implementation of this Agreement, as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

15

(K) **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(L) **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiff and Defendant had signed the same instrument. The failure of Plaintiff to sign this Agreement does not affect its enforceability.

(M) **Facsimile/Electronic Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

PLAINTIFF:

Iskander Rasulev

_I. Rasul_ (signature)
_____
Dated: January 30, 2017


FOR DEFENDANT:

By: _____

Title:

Dated: January __, 2017


BY COUNSEL AS TO FORM:

CLASS COUNSEL

Wittels Law, P.C.

By: _____
    Steven L. Wittels
    J. Burkett McInturff

Dated: January __, 2017


DEFENDANT'S COUNSEL

Duane Morris LLP

By: _____
    Eve I. Klein
    Katelynn M. Gray

Dated: January __, 2017

17

PLAINTIFF:

Iskander Rasulev

_____
Dated: January___, 2017

FOR DEFENDANT:

By: _____

Title: *Irene Sirayskaya, Counsel for Defendant*

Dated: January 30, 2017

BY COUNSEL AS TO FORM:

CLASS COUNSEL

Wittels Law, P.C.

By: _____
    Steven L. Wittels
    J. Burkett McInturff

Dated: January___, 2017

DEFENDANT'S COUNSEL

Duane Morris LLP

By: _____
    Eve I. Klein
    Katelynn M. Gray

Dated: January 30, 2017