UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

ISKANDER RASULEV,

                              Plaintiff,

            -against-                                    No:  16 Civ. 1993 (LDH) (CLP)

GOOD CARE AGENCY, INC.,

                              Defendant.

---------------------------------------------------------X

### [PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND RELATED RELIEF

The above-entitled matter came before the Court on Plaintiff's Motion for Final Approval of Class Settlement and Related Relief.  (ECF No. 65).  Pursuant to the terms of the parties' Final Settlement Agreement and Release dated January 30, 2017 ("Settlement Agreement"), Defendant did not oppose Plaintiff's motion.

Plaintiff and the members of the proposed classes ("Class Members") are current and former home health care workers employed by Good Care Agency, Inc. ("Defendant" or "Good Care").  On April 22, 2016, Plaintiff filed a Class and Collective Action Complaint against Good Care on behalf of himself and all others similarly situated, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.*, and the New York Labor Law ("NYLL") including failure to pay the proper overtime rate, denial of "spread of hours" pay for time worked in excess of 10 hours in a shift or split-shift, and record keeping violations.  (ECF No. 1).  The Complaint seeks recovery of wages, liquidated damages, interest, an order enjoining Good Care's improper pay practices including withheld overtime and spread of hours pay, and

attorneys' fees and costs.  *Id.*

Following an initial case management conference and the filing of an amended complaint adding additional causes of action under both federal and state wage and hour laws, including failure to pay Good Care's workers on a timely basis and failure to comply with the New York Wage Parity Law for home care workers, Plaintiff engaged with Defendant in numerous hard-fought proceedings.  These included multiple appearances before this Court and Judge DeArcy Hall on Good Care's proposed motions to stay discovery and dismiss the complaint, and extensive negotiations regarding discovery.

Following months of post-suit discussions and negotiations, the parties agreed to try and resolve the case in an effort to avoid expensive, time consuming, and protracted litigation.  On November 30, 2016, the parties entered into a pre-mediation agreement, which tolled the limitations period on Plaintiff's claims and contained confidentiality provisions facilitating the exchange of information and documentation, including Defendant's applicable time and payroll data.  The parties then exchanged documents and other data to assess the claims and defenses and to calculate potential damages in advance of mediation.

On December 22, 2016, after an all-day mediation, the parties reached agreement on the settlement amount and several other key terms, taking into account Good Care's ability to pay a settlement that would both compensate proposed Class Members and allow the agency to remain in business.  Following the mediation, the parties negotiated the remaining terms of the settlement, which are memorialized in the Settlement Agreement.  At all times, the parties' negotiations have been vigorous, adversarial, and at arm's length.

The final settlement provides a monetary benefit to the class of $1,500,000.00.  As described herein, each Class Member is entitled to a *pro rata* share of the settlement fund based

on each individual's aggregate damages for all of the claims alleged in the operative complaint, net of administration costs, litigation expenses, and attorneys' fees.

On April 19, 2017, this Court entered an Order preliminarily approving the settlement, conditionally certifying the settlement classes, appointing Wittels Law, P.C. as Class Counsel, and authorizing notice to all Class Members (the "Preliminary Approval Order"). (ECF No. 61). On May 3, 2017, this Court approved the proposed Notices. (ECF No. 64).

On May 17, 2017, the Claims Administrator mailed the Court-approved Notices and Claim Forms to 1,947 Class Members informing them of their rights under the settlement, including the right to opt out or object to the settlement, of Plaintiff's request for payment of a service award, and of Class Counsel's intention to seek reimbursement of litigation costs along with attorneys' fees of 30% of the settlement fund. In addition, on June 30, 2017, reminder postcards were sent to those Class Members who had not yet submitted a Claim Form. The reminder postcard was approved by the parties' attorneys, and was intended to remind Class Members that the deadline for submitting a claim or opting out was July 17, 2017, as stated in the Notice.

On July 19, 2017, Plaintiff filed a Motion for Final Approval seeking (i) final certification of the Rule 23 Class under Federal Rule of Civil Procedure 23 for settlement purposes only, (ii) final approval of all terms applicable to the Rule 23 Class set forth in the Settlement Agreement, (iii) approval of all terms applicable to the FLSA Collective set forth in the Settlement Agreement, including finding for purposes of settlement only that the FLSA Collective Members are "similarly situated" under Section 216(b) of the FLSA, (iv) approval of the methods of notice used by the parties as the best notice practicable under the circumstances, (v) approval of Plaintiff's request for a service award, (vi) approval of Class Counsel's request

for fees and litigation expenses, (vii) approval of the parties' proposed final settlement procedure, (viii) incorporation of all terms of the Settlement Agreement, including the release, and (ix) dismissal of the action with prejudice and entering final judgment.

The Court held a fairness hearing on July 26, 2017.  No Class Member objected to the settlement, either prior to or at the hearing.

Having considered the Plaintiff's motion for final approval, and the supporting declaration, the oral argument presented at the July 26, 2017 fairness hearing, and the complete record in this matter, for the reasons set forth therein and stated on the record at the July 26, 2017 hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

## I.   CERTIFICATION OF THE "RULE 23 CLASS" PURSUANT TO FRCP RULE 23

1.    The Court grants final certification to the following class under Federal Rule of Civil Procedure 23(e), for settlement purposes only, and with no other effect on this litigation (the "Rule 23 Class"):

> All individuals who have been employed by Defendant as Home Health Care Attendants—which includes hourly Home Health Attendants, Personal Care Assistants, Personal Care Assistants Unskilled, Consumer Directed Personal Assistance Program (CDPAP) workers and Live-in Personal Care Attendants—at any time from April 1, 2012 through April 19, 2017.

2.    As stated in the Court's April 19, 2017 Order granting preliminary approval, Plaintiff meets the requirements for class certification under Rule 23.  *See* ECF No. 61, at 7–12 (finding all elements of Rule 23(a) and (b)(3) satisfied and stating that "the Court hereby provisionally certifies a Rule 23 Class for settlement purposes").  The Court's findings with respect to the satisfaction of the requirement of Rules 23(a) and 23(b)(3), for settlement purposes only, are fully incorporated by reference herein.

## II.   APPROVAL OF THE RULE 23 CLASS ACTION SETTLEMENT

3.      "In evaluating the merits of a proposed class action settlement, the court must ensure that the settlement is both procedurally and substantively fair." *Hall v. ProSource Technologies, LLC*, No. 14 Civ. 2502 (SIL), 2016 WL 1555128, at *5 (E.D.N.Y. Apr. 11, 2016) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).

4.      "Courts in the Second Circuit are mindful of the strong judicial policy in favor of settlement of class action suits." *Id.* (internal quotation marks omitted); *see also Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 99 (E.D.N.Y. 2015) (quoting *Wal-Mart Stores*, 396 F.3d at 116); *Toure v. Amerigroup Corp.*, No. 10 Civ. 5391 (RLM), 2012 WL 3240461, at *2 (E.D.N.Y. Aug. 6, 2012) ("Absent fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who negotiated the settlement.") (internal citations and quotations omitted).

### A.   Procedural Fairness

5.      Courts determine a settlement's procedural fairness by looking at the negotiating process leading to settlement. *See Garcia v. Pancho Villa's of Huntington Village, Inc.*, No. 09 Civ. 486 (ETB), 2012 WL 5305694, at *2 (E.D.N.Y. Oct. 4, 2012) (citing *Wal-Mart Stores*, 396 F.3d at 116). "[A] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* Further, the law strongly favors compromise and settlement of class actions "because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Viafara v. MCIZ Corp.*, No. 12 Civ. 7452 (RLE), 2014 WL 1777438, at *6 (S.D.N.Y. Apr. 30, 2014) (collecting cases endorsing early settlement of wage and hour class actions); *Azogue v. 16 for 8 Hospitality LLC*, No. 13 Civ. 7899, 2016 WL 4411422, at *3 (S.D.N.Y. Aug. 19, 2016); *see also Clem v. KeyBank, N.A.*, No.

13 Civ. 789 (JCF), 2014 WL 2895918, at *5 (S.D.N.Y. June 20, 2014) (commending parties for acting responsibly in reaching early settlement).

6.      Here, the settlement was reached after Class Counsel conducted a thorough investigation and evaluated the proposed Class' claims and defenses, and after vigorous arm's-length negotiations between the parties that were facilitated by a noted employment law mediator.  ECF No. 67, Declaration of Steven L. Wittels, Esq., in Support of Plaintiff's Motion for Final Approval of the Class Action Settlement and Related Relief ("Wittels Decl.") ¶ 20. Accordingly, this settlement bears all hallmarks of a fair settlement.  *See, e.g.*, *Toure*, 2012 WL 3240461, at *3 ("Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement achieved meets the requirements of due process.").  Here, as in *Puglisi v. TD Bank, N.A,* "[a]n experienced class action employment mediator, Hunter Hughes, assisted the Parties with the settlement negotiations and presided over a full-day mediation."  No. 13 Civ. 637 (LDW) (GRB), 2015 WL 574280, at *2 (E.D.N.Y. Feb. 9, 2015) (final approval granted in *Puglisi v. TD Bank, N.A*., No. 13 Civ. 637 (GRB), 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015)).  The Court finds that the negotiating process that resulted in the settlement was procedurally fair because the settlement was reached through vigorous, arm's-length negotiations supervised by an experienced mediator, after experienced counsel had evaluated the merits of Plaintiff's claims, and is untainted by collusion.

    B.      Substantive Fairness

7.      The settlement is also substantively fair.  All of the factors set forth by the Second Circuit in *City of Detroit v. Grinnell Corp.* for evaluating the substantive fairness of a class action settlement weigh in favor of final approval.  495 F.2d 448, 463.  The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3)

the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing

liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action

through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range

of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range

of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks

of litigation. *Id.* These factors are not to be applied in a rigid, formalistic manner. Rather, "[t]he

evaluation of a proposed settlement requires an amalgam of delicate balancing, gross

approximations and rough justice." *Id.* at 468.

1.  **Litigation Through Trial Would be Complex, Costly, and Long**
    **(*Grinnell* Factor 1).**

8.      The first *Grinnell* factor prompts courts to weigh the benefits of the potential

settlement against the time and expense of continued litigation. *Hernandez*, 306 F.R.D. at 100.

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude

of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F.

Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d

Cir. 2001)). This case is no exception, with over 1,900 Class Members, and claims under state

and federal law, including infrequently litigated claims challenging Good Care's payroll

practices. *See also Karic v. Major Automotive Companies, Inc.*, No. 09 Civ. 5708 (CLP), 2016

WL 1745037 at *5 (E.D.N.Y. Apr. 27, 2016) (noting that "[i]n the absence of a settlement,

further litigation in this case would clearly cause additional expense and delay, and could lead to

a fact-intensive trial."); *Hernandez*, 306 F.R.D. at 100 (factor weighs in favor of approval

because class and collective action litigation to recover overtime wages "would be complex,

expensive, and long"); *Reid v. SuperShuttle Intern., Inc.*, No. 08 Civ. 4854 (JG) (VVP), 2012

WL 3288816, at *2 (E.D.N.Y. Aug. 10, 2012) (factor favors approval because "[a]bsent a

settlement, this case would likely take substantial time and resources to resolve.  There would be the completion of additional discovery, briefing and argument of motions for summary judgment and for class certification (and, with class certification, potential appeals) and eventually, perhaps, a lengthy trial followed by further appeals.").  By reaching a favorable settlement prior to dispositive motions or trial, the parties have avoided significant expense and delay and instead made available substantial monetary relief to Class Members in an efficient manner that avoids the risks inherent in employment class actions specifically, and litigation generally.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

**2.   The Class' Reaction to the Settlement Has Been Positive (*Grinnell* Factor 2).**

9.       "It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Chavarria v. New York Airport Service, LLC*, 875 F. Supp. 2d 164, 174 (E.D.N.Y. 2012) (internal quotations and citations omitted).  The court-approved Notices in English and Russian mailed to all Class Members included a clear explanation of the Settlement Agreement's allocation formula which permitted each Class Member to estimate their recovery in exchange for releasing their claims against Defendant.  The Notices also informed recipients about how Class Members could exclude themselves from the settlement and/or object to the settlement, and the consequences of inaction.  The Notices also described the material terms of the settlement, informed Class Members about the allocation of attorneys' fees, and provided specific information regarding the date, time, and place of the final approval hearing.  Here, Class Members have shown a favorable response to the settlement.  To date, no Class Member has objected to the settlement and only one has opted out.  "If only a small number of objections to the class settlement are received, 'that fact can be viewed as indicative of the adequacy of the settlement.'" *Gay v. Tri-Wire*

*Engineering Solutions, Inc.*, No. 12 Civ. 2231 (KAM) (JO), 2014 WL 28640, at *7 (E.D.N.Y.

Jan. 2, 2014) (quoting *Wal-Mart Stores*, 396 F.3d at 118); *see also Babcock v. C. Tech

Collections, Inc*., No. 1 Civ. 3124 (MDG), 2017 WL 1155767, at *6 (E.D.N.Y. Mar. 27, 2017)

(that out of 3,710 class members none objected to the settlement and only eight sought exclusion

"weigh[ed] in favor of approval]").

    **3.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case
Responsibly (*Grinnell* Factor 3).**

    10.    The pertinent question raised by this factor is "whether counsel had an adequate

appreciation of the merits of the case before negotiating." *Aboud v. Charles Schwab & Co., Inc.*,

No. 14 Civ. 2712 (PAC), 2014 WL 5794655, at *3 (S.D.N.Y. Nov. 4, 2014) (quoting *In re

Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 537 (3d Cir. 2004)). "[T]he pretrial negotiations

and discovery must be sufficiently adversarial that they are not designed to justify a settlement . .

. [but are] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Hall*,

2016 WL 1555128, at *6.

    11.    The parties' discovery here meets this standard. Although preparing this case

through trial would likely require many hundreds (if not thousands) of hours of additional

discovery for both sides, the parties have completed enough discovery to recommend settlement.

As discussed above, Plaintiff's Counsel undertook in-depth pre-litigation investigation, and after

the case commenced worked closely with expert Dr. Alexander Vekker on the analysis of

voluminous company payroll records to assess the scope and likelihood of wage and payroll

violations. Wittels Decl. ¶¶ 11, 19. Class Counsel also undertook significant pre- and post-

lawsuit legal research and analysis concerning Plaintiff's claims. *Id*. at ¶¶ 11–19. As a result of

this and Class Counsel's participation in a vigorous, all-day mediation conducted by an

experienced employment law mediator, Class Counsel was able to evaluate the strengths and

weaknesses of Class Members' claims and reasonably estimate total potential damages. Based on these circumstances, the parties were well-equipped to evaluate the strengths and weaknesses of the case. *See Hernandez,* 306 F.R.D. 91 at 100, 102 (approving settlement where discovery included "investigation and legal research into the merits, likely damages, and affirmative defenses, interviewing plaintiffs and class members, and analyzing documents turned over by defendants"); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (approving settlement "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to Defendant's time and pay practices and where counsel's negotiations had "been in no way collusive"); *Garcia*, 2012 WL 5305694 at *2; *Toure*, 2012 WL 1432302, at *1. Therefore, the third *Grinnell* factor favors final approval.

### 4. **Plaintiff Faces Real Risks if the Case Proceeds (*Grinnell* Factors 4 and 5).**

12.    There are considerable risks of proceeding to trial. First, "[l]itigation inherently involves risks." *Hall*, 2016 WL 1555128, at *7 (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y 1997)). Indeed, "the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Id.* (quoting *Siler v. Landry's Seafood House–North Carolina, Inc.,* No. 13 Civ. 587, 2014 WL 2945796, at *6 (S.D.N.Y. June 30, 2014)). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).

13.    Moreover, there is no guarantee that this case will lend itself to class certification. Specifically, Defendant "would argue that there are individualized questions as to the job duties and payment structure for the class members that makes certification and ultimately trial on a class-wide basis impractical." *Sierra v. Spring Scaffolding LLC*, No. 12 Civ. 05160, 2015 WL 10912856, at *5 (E.D.N.Y. Sep. 30, 2015). A "trial on the merits would involve significant risks

to Plaintiffs because of the fact-intensive nature of proving liability under federal and state law, and in light of the defenses available to Defendant, which would pose substantial risk as to both liability and damages." *Hall*, 2016 WL 1555128, at *7 (internal quotations and citations omitted). Plaintiff would have to overcome, among other things, Good Care's defenses that at least some of the Class' claims are time-barred, that Defendant did not act willfully, that Plaintiff's claims were mooted by Defendant's Rule 68 offers, that Plaintiff was never entitled to be compensated for wage statement violations, and that Plaintiff and Class Members were paid in accordance with state and federal law. *Sierra*, 2015 WL 10912856, at *5.

14.     The resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The settlement alleviates these uncertainties and weighs in favor of approval. *See*, *e.g.*, *Hernandez*, 306 F.R.D. at 100 (finding that risks as to both liability and damages, including overcoming defendant's defenses and proving willfulness weighed in favor of final approval).

**5.   Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).**

15.     The risk of obtaining class certification and maintaining it through trial is also present. Contested class and collective certification motions would require extensive additional discovery and briefing, as well as additional class and expert discovery. To obtain those determinations, Plaintiff would likely have to overcome Defendant's arguments that individual questions preclude class certification, that Plaintiff is not an adequate class representative, that the relevant overtime policies were not uniform for all home care workers, and that Plaintiff cannot prove damages. *See*, *e.g.*, *Zeller v. PDC Corporation*, No. 13 Civ. 5035 (ARR) (JO), 2016 WL 748894, at *3 (E.D.N.Y. Jan. 28, 2016) (*Grinnell* Factor 6 satisfied because "maintaining a class through trial would be neither simple nor easy").

16.     Further, Defendant would likely challenge those determinations after the close of discovery.  Risk, expense, and delay permeate such processes, and the fact that settlement eliminates these costs strongly favors approval.  *Hall*, 2016 WL 1555128, at *7 (finding that "[s]ettlement eliminates the risk, expense, and delay inherent in a potential opposition to class certification."); *Hernandez*, 306 F.R.D. at 100–01 (same).

**6.  Defendant's  Ability to Withstand a Greater Judgment is Uncertain (*Grinnell*  Factor 7).**

17.     The Parties negotiated heavily over the settlement amount, taking into account Defendant's ability to pay a settlement that would both compensate proposed Class Members and allow the agency to remain in business.  Wittels Decl. ¶ 5.  This strongly favors approval of the settlement.  *Chambery v. Tuxedo Junction Inc.*, No. 12 Civ. 06539 (EAW), 2014 WL 3725157, at *7 (W.D.N.Y. July 25, 2014) (settlement strongly favored where defendant's finances played a large role in reaching settlement and defendant needed to borrow to satisfy settlement payment).  Further, even if Defendant could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair."  *Hall*, 2016 WL 1555128, at *8 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n. 9); *Hernandez*, 306 F.R.D. at 101 (same).

**7.  The Settlement Amount is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9).**

18.     The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Bodon v. Domino's Pizza, LLC,* No. 09 Civ. 2941, 2015 WL 588656, at *6 (E.D.N.Y. Jan. 16, 2015) (quoting *In re Austrian*, 80 F. Supp. 2d at 178).  "[T]he question . . . is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces."  *Id.*  "There is no reason, at least in theory, why a satisfactory

settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n. 2.

19.     Here, Defendant has agreed to settle this case for a substantial amount: $1,500,000.00.  Given the attendant risks of litigation, the Settlement provides substantial value to each Class Member.  Every Class Member will receive a payment based on their individual aggregate damages for the overtime and late payment claims alleged in the Amended Complaint. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding with litigation, the settlement amount is reasonable.  The eighth and ninth *Grinnell* factors therefore weigh in favor of final approval.

20.     The Court hereby grants Plaintiff's Motion for Final Approval and finally approves all terms applicable to Rule 23 Class set forth in the Settlement Agreement.

## III.     <u>APPROVAL OF THE FLSA SETTLEMENT</u>

21.     "The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. . . .  Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement . . . .  If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Kochilas v. Nat'l Merch. Servs., Inc.*, No. 1 Civ. 311 (LB), 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (internal citations and quotations omitted).  "Because the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement." *Sierra*, 2015 WL 10912856, at *4 (internal quotations and citations omitted).

22.     All of the applicable *Grinnell* factors weigh in favor of granting final approval of the Settlement Agreement here.  As discussed above, the instant settlement was the result of contested litigation and vigorous arm's-length negotiation.  The Court finds that this settlement is the compromise of a disputed claim.  The Parties were represented by counsel experienced in employment class action litigation, exchanged substantial discovery, and chose to settle this matter in light of the many risks associated with further litigation.

23.     The Court hereby approves all terms applicable to FLSA Collective set forth in the Settlement Agreement.  For purposes of this settlement only, the FLSA Collective is defined as:

> All individuals who worked for Good Care Agency, Inc. as Home Health Care Attendants at any time from April 22, 2013 through April 19, 2017.

## IV.    DISSEMINATION OF NOTICE

24.     In accordance with the Preliminary Approval Order, the Notices were sent by mail (and email where available) on May 17, 2017 to each respective Class Member at his or her last known address (with re-mailing of returned Notices for which new addresses could be located).  Wittels Decl. ¶ 33.  In addition, a reminder postcard was sent via mail and email on June 30, 2017 to the Class Members who had not yet filed a Claim Form reminding them that the deadline for submitting a Claim Form or opting out was approaching.  *Id.*  Further, the parties assisted the Claims Administrator in responding to Class Member inquiries about the settlement and resolving issues related to improperly filed claim forms.  Wittels Decl. ¶ 34.  The Court finds that the Notices fairly and adequately advised Class Members of the terms of the settlement, their right to object to the settlement, as well as the right of Rule 23 Class Members to opt out of the settlement and the right of the FLSA Collective Members to "opt in" to the settlement, and to appear at the fairness hearing conducted on July 26, 2017.  The Court finds that Class Members

14

were provided with the best notice practicable under the circumstances.  The Court further finds

that the Notices and their distribution comported with all constitutional requirements, including

those of due process, and all requirements of the Federal Rules of Civil Procedure, and any other

applicable laws or rules.  The Court confirms A.B. Data, Ltd. as the Claims Administrator.

**V.**      **SERVICE AWARDS TO PLAINTIFF**

25.      The Court finds reasonable a service award totaling $15,000 for Plaintiff Iskander

Rasulev.

26.      "Courts regularly grant requests for service awards in class actions to compensate

plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks

incurred by becoming and continuing as a litigant, and any other burdens sustained by the

plaintiffs."  *Hall*, 2016 WL 1555128 at *9 (internal quotations and citations omitted); *see also*

*Toure*, 2012 WL 3240461 at *6 ("Here, the service awards recognize the risks that the named

Plaintiffs . . . faced by participating in a lawsuit against their current or former employer and the

efforts they made on behalf of the class, including producing documents, responding to

interrogatories, and preparing for and having their depositions taken.").  Further, Plaintiff "took

significant risk in pursuing the case," as he "could have faced retaliation from defendants and/or

be 'black balled' from the industry" as a result of his involvement.  *Karic*, 2016 WL 1745037 at

*7.  "Although there has been no threat or indication of retaliation, courts have held that class

representatives merit recognition for assuming the risk of such for the sake of absent class

members."  *Id*. (internal citations and quotations omitted).

27.      Plaintiff here provided significant services to the Class and undertook what he

believed to be significant risks in bringing this case.  Plaintiff informed Class Counsel of the

facts initially and as the case progressed, provided counsel with relevant documents in his

possession, participated in multiple interviews with Class Counsel, reviewed litigation documents, assisted counsel in preparing for mediation and settlement discussions, and reviewed and approved the terms of the Settlement Agreement.  Wittels Decl. ¶ 37.

28.      Moreover, the service award requested here is reasonable and well within the range awarded by Courts ruling on similar matters.  *See, e.g.*, *Karic*, 2016 WL 1745037 at *8 (collecting cases and approving service awards of $20,000 each to seven named plaintiffs in wage and hour action); *Puglisi*, 2015 WL 4608655, at *1 (approving service awards of $15,000 each for each two named plaintiffs and $10,000 each for three other named plaintiffs in a wage and hour action); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2013 WL 1209563, at *10 (S.D.N.Y. Mar. 21, 2013) (approving service awards of $15,000 and $13,000 to class representatives in wage and hour action).

## VI.      AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

29.      On April 19, 2017, the Court appointed Wittels Law, P.C. as Class Counsel, stating that "proposed Class Counsel satisfy the criteria of Rule 23(g)," and that Wittels Law has "extensive experience litigating and settling wage and hour cases and other employment cases, and thus they are well-versed in the applicable law."  (ECF No. 61 at 16).

30.      The Settlement Agreement and Court-approved Notices sent to all Class Members provide that Class Counsel would apply to the Court for attorneys' fees of up to 30% of the settlement fund, and reimbursement of costs and expenses.  To date, no Class Member has objected to this request, which provides support for Class Counsel's fee request.

31.      Plaintiff requests attorneys' fees of $450,000.00 (30 % of the total settlement amount) plus costs and expenses of $4,924.99.  The Court hereby grants Plaintiff's request for attorneys' fees and costs and expenses, and awards Class Counsel $454,924.99.

32.     Defendant shall pay Class Counsel's attorneys' fees and expenses in accordance with the terms of the Settlement Agreement.

33.     Defendant shall also pay the costs of the Mediator Hunter Hughes, expert Dr. Alexander Vekker, and Claims Administrator A.B. Data in accordance with the Settlement Agreement.

**1.   The Percentage Method is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit.**

34.     Although the Court has discretion to award attorneys' fees based on either the lodestar method or the percentage-of-recovery method, "the percentage-of-recovery method is consistent with the trend in this Circuit." *Hernandez*, 306 F.R.D. at 102; *see also Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV) (RER), 2011 WL 754862, at *6 (E.D.N.Y. Nov. 12, 2011) (collecting cases adopting the percentage-of-the-fund method); *Westerfield v. Washington Mut. Bank*, No. 06 Civ. 2817 (JMA), 2009 WL 5841129, at *4 (E.D.N.Y. Oct. 8, 2009) (following the "trend" and granting attorneys' fee based on percentage-of-the-fund).  There are several reasons that courts in this circuit prefer the percentage method.  First, "the percentage method 'directly aligns the interests of the class and its counsel' because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made." *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *14 (S.D.N.Y. Sept. 16, 2011) (quoting *Wal-Mart Stores*, 396 F.3d at 122); *see also Babcock v. C. Tech Collections, Inc.*, 2017 WL 1155767, at *10 (same); *Chavarria v. New York Airport Service, LLC*, 875 F. Supp. 2d 164, 177 (E.D.N.Y. 2012) (same).  Second, the percentage method "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Raniere v. Citigroup, Inc.*, No. 11 Civ. 2448 (RWS), 2015 WL 5724669, at *9 (S.D.N.Y. Sep. 29, 2015) (quoting *Wal-Mart Stores*, 396 F.3d at 121); *Babcock*, 2017 WL

1155767, at *10 (same). Third, this method "preserves judicial resources because it 'relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions.'" *Johnson*, 2011 WL 4357376, at *14; *Chavarria*, 875 F. Supp. 2d at 177 (same).

**2.   The Goldberger Factors Support Plaintiff's Requested Fee Award.**

35.     In determining the reasonableness of fee applications, courts consider the six factors set forth by the Second Circuit in *Goldberger v. Integrated Res., Inc.*: (A) the time and labor expended by counsel; (B) the magnitude and complexities of the litigation; (C) the risk of the litigation; (D) the quality of representation; (E) the requested fee in relation to the settlement; and (F) public policy considerations. 209 F.3d 43, 50. All *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application here.

A.     Class Counsel's Time and Labor

36.     Class Counsel expended substantial hours and resources in achieving the $1,500,000.00 settlement. Before filing this action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses. Wittels Decl. ¶¶ 11–12. Class Counsel focused their investigation and legal research on the underlying merits of Class Members' claims, the damages to which they alleged they were entitled, and the likelihood of obtaining class certification. *Id*. Class Counsel conducted extensive background research on Good Care and obtained information on Good Care's compensation policies and practices. *Id*. Plaintiff's Counsel also conducted in-depth interviews concerning, *inter alia*, Good Care's treatment of its employees, the number of hours home aides worked, and other information pertinent to Plaintiff's claims in this action. *Id*. Plaintiff's Counsel also obtained and reviewed numerous documents and communications from Plaintiff and conducted research and investigation into the pertinent case law and the facts in other FLSA and state wage and hour

class actions that informed the present case, as well as extensive legal research and analysis concerning the unique and infrequently litigated claims at issue in this litigation. *Id*.

37.     Class Counsel initiated and participated in months of discussions and negotiations with Defendant concerning litigation of Plaintiff's claims, and reviewed thousands of pages of documents from Defendant, including time and payroll records and data showing the number of home care workers. *Id*. ¶ 18.  Plaintiff's Counsel also engaged the services of Vekker Consulting, LLC, and prepared and submitted a comprehensive confidential mediation brief. *Id*. ¶ 19.

38.     During a long mediation overseen by Hunter Hughes, Esq., a mediator experienced in wage and hour class and collective actions, Class Counsel negotiated a settlement amount and other key settlement terms, which were later memorialized in the Settlement Agreement. *Id*. ¶ 20.  Class Counsel thereafter moved for preliminary approval of the settlement and conditional certification of a collective action under § 216(b) of the FLSA.  (ECF No. 55).

39.     In total, Class Counsel has expended over 865 hours in attorney time.  Wittels Decl. ¶ 53.  These hours are reasonable for a complex case like this one.  Indeed, Class Counsel's lodestar is over $550,000, which as noted above significantly exceeds the sum requested. *Id*. ¶ 56.  Moreover, Class Counsel is certain to spend additional time in the future aiding in the further administration of the settlement, and the requested fee award is also meant to compensate them for that time. *See, e.g.*, *Garcia*, 2012 WL 5305694, at *8 ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request."); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381 (ALC), 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (same).

B.    Magnitude and Complexity of the Litigation

40.    "In evaluating the second *Goldberger* factor, the size and difficulty of the issues in a case are significant factors to be considered. . . .  To that end, among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class pursuant to Rule 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)."  *Hall*, 2016 WL 1555128 at *12 (internal citations and quotations omitted).  "Courts have recognized that wage and hour cases involve complex legal issues."  *Johnson*, 2011 WL 4357376, at *17 (citation omitted).  The instant case hinged on several mixed and complex questions of fact and law, which supports approval of Class Counsel's attorneys' fee request.  *See Viafara*, 2014 WL 1777438, at *11 ("FLSA claims typically involve complex mixed questions of fact and law.").

C.    Risks of the Litigation

41.    "Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees."  *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (quotations omitted).  "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."  *In re MetLife Demutualization Litigation*, 689 F. Supp. 2d 297, 361 (E.D.N.Y. 2010) (citation omitted).  Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk.

42.    Class Counsel obtained a large settlement for Class Members despite significant questions (discussed in more detail *supra*) about whether Plaintiff could make the legal and factual showing necessary to prevail.  Moreover, in light of *Wal-Mart Stores, Inc. v. Dukes*, 131

20

S. Ct. 2541 (2011), Class Counsel faced significant risk associated with class certification under Rule 23 because of the question of whether Class Members' duties were sufficiently similar to render them "manual workers" entitled to weekly payment under the NYLL and related FLSA prompt payment doctrine.  Thus, the risks of the litigation factor supports Class Counsel's attorneys' fee request.  *See Sierra*, 2015 WL 10912856, at *7 (fact that "Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation" weighed in favor of a one-third recovery).

D.   Quality of Representation

43.   "When evaluating the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit."  *Hall*, 2016 WL 1555128 at *15 (internal quotations and citations omitted).  Good Care has agreed to pay a total of $1,500,00.00 to settle this litigation.  Wittels Decl. ¶¶ 21, 41.  Weighing these immediate benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is highly favorable.

44.   Further, and as already noted, Class Counsel has substantial experience in wage and hour class and collective action cases.  *Id.*  ¶¶ 43–49.  "Courts have viewed counsel's experience in wage and hour cases as directly responsible for a favorable settlement."  *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 480–81 (S.D.N.Y. 2014) (collecting cases); *Westerfield*, 2009 WL 5841129, at *4 (granting 30% fee award where "Co-Lead Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions and are well-versed in wage and hour law and in class action law").  Class Counsel's experience in wage and hour litigation therefore weighs in favor of finding that the fee award is reasonable.

E.      The Fee is Reasonable in Relation to the Settlement

45.     Class Counsel's request for less than one-third of the fund provides Class

Members additional value, as a fee of one-third of the total settlement has repeatedly been

deemed "reasonable and consistent with the norms of class litigation in this Circuit." *Garcia*,

2012 WL 5305694, at *8 (internal quotations and citations omitted); *Toure*, 2012 WL 3240461,

at *5 (same).  Further, Courts in this Circuit have routinely approved requests for one-third of the

fund in cases with settlement funds substantially larger than the present action.  *See, e.g.*,

*Beckman*, 293 F.R.D. at 81 (awarding one-third of $4.9 million fund in wage and hour action);

*Khait*, 2010 WL 2025106, at *8 (awarding "$3,052,500 in attorneys' fees or thirty-three percent

(33%) of the Fund"); *Toure*, 2012 WL 3240461 at *5 (awarding "$1,483,333 in attorneys' fees,

or one-third of the fund"); *Puglisi*, 2015 WL 4608655, at *1  ("The attorneys . . . who prosecuted

this case are experienced class action employment lawyers with good reputations among the

employment law bar.  The Court grants Plaintiff's Motion for Attorneys' Fees and awards Class

Counsel $3,300,000.00 in attorneys' fees, which is one-third of the settlement fund.").  The fee

request is thus reasonable.

F.      Public Policy Considerations

46.     In ruling on a request for attorneys' fees, "the Second Circuit and courts in this

district also have taken into account the social and economic value of class actions, and the need

to encourage experienced and able counsel to undertake such litigation."  *In re Sumitomo Copper*

*Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999).  The FLSA and the NYLL are remedial statutes

designed to protect the wages of workers.  *See A.H. Phillips v. Walling*, 324 U.S. 490, 493

(1945) (recognizing the FLSA's objective—ensuring that every employee receives "a fair day's

pay for a fair day's work").  "Adequate compensation for attorneys who protect wage and hour

rights furthers the remedial purposes of the FLSA and the NYLL." *Willix*, 2011 WL 754862, at *6 (collecting cases brought under both the FLSA and NYLL). "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Id.* (citing *Goldberger*, 209 F.3d 43 at 51). Consequently, courts have recognized that fee awards in wage and hour cases serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discouraging future misconduct of a similar nature. *Id.* (citing *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338–39 (1980)); *see also Khait*, 2010 WL 2025106, at *8 (same); *Toure*, 2012 WL 3240461 at *5 (same); *Raniere*, 2015 WL 5724669, at *9 ("Approval [of one-third fee] forwards the public interest in deterring exploitation of workers by encouraging lawyers to represent their rights."). Class actions are also "an invaluable safeguard of public rights." *Viafara*, 2014 WL 1777438 at *14 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985)). Here, Class Counsel successfully negotiated a settlement that obtains significant monetary compensation for Class Members. These considerations weigh in favor of granting the fee request.

### 3.   The Lodestar Cross Check Further Supports Class Counsel's Requested Fee

47.     "Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a 'baseline' or as a 'cross check.'" *Johnson*, 2011 WL 4357376 at *20 (citation omitted). While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously. *Goldberger*, 209 F.3d at 50.

48.     Applying the lodestar method as a "cross check," the Court finds that the fee that Class Counsel seeks is reasonable. Class Counsel's request for an attorneys' fee of approximately 30% of the total settlement amount is more than $100,000 less than Class Counsel's lodestar. Wittels Decl. ¶ 56. The requested fee amount is thus less than the attorneys'

fees typically requested in this Circuit, as "[c]ourts award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Viafara*, 2014 WL 1777438 at *15 (collecting cases).  Class Counsel's request for $450,000 in attorneys' fees plus incurred expenses is therefore well within the range of reasonableness.

## VII.   FINAL SETTLEMENT PROCEDURE

49.     Following this grant of Plaintiff's Motion for Final Approval of Class Action Settlement and Related Relief, the Court will enter a Final Judgment.  Because only one Class Member opted out of the settlement and no Class Members filed an objection before the expiration of the claims period, pursuant to Section 1.13 of the Settlement Agreement, the "Effective Date" of the settlement shall be thirty (30) days following this Order granting final approval of the settlement if no appeal is taken from this Order.

50.     The parties are directed to consummate the Settlement Agreement in accordance with its terms.

51.     Within twenty-one (21) days of Effective Date, the Claims Administrator shall (a) mail to each Settlement Class Member a check in the amount calculated pursuant to the Settlement Agreement; and (b) issue payment for a Service Award to Plaintiff; (c) issue to Class Counsel payment for Attorneys' Fees and Litigation Expenses; and (d) make payment of the Claims Administrator's costs, the Mediator's Fees, and Vekker Consulting's costs in accordance with the terms of the Settlement Agreement.

52.     The Court retains jurisdiction over this action as to all matters relating to the interpretation, administration, implementation and enforcement of the Settlement Agreement and this Order.

53. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order. The release of claims, contained in Section 3.8 of the Settlement Agreement, is incorporated by reference herein. The release shall be self-executing upon the Effective Date.

54. The individual and class claims asserted in this litigation are hereby dismissed on the merits with prejudice as against the "Releasees" defined in Settlement Agreement Section 1.27 and without costs and fees except for the attorneys' fees expressly provided for in the Settlement Agreement and as set forth in this Order. Any member of the Rule 23 Class who failed to timely and properly file a letter requesting exclusion from the Rule 23 Class as permitted by the Court, and each "Overtime & FLSA Late Payment Subclass" member who negotiates a settlement check, is hereby barred and permanently enjoined from asserting otherwise, and is subject to the terms and conditions of the Settlement Agreement, including the release of claims.

55. The fact and terms of the Settlement Agreement, this Order, all negotiations, discussions, drafts and proceedings in connection with the settlement, and any act performed or document signed in connection with the settlement:

   a. Shall not be offered or received against Good Care as evidence of, or be deemed to be evidence of, any presumption, concession or admission by Good Care with respect to the truth of any fact alleged by Plaintiff or the validity, or lack thereof, of any claim that has been or could have been asserted in this litigation or in any litigation, or the deficiency of any defense that has been or could have been asserted in this litigation or any litigation, or of any liability, negligence, fault or wrongdoing of Good Care;

      b.   Shall not be offered or received against Good Care as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by Good Care; and

      c.   Shall not be offered or received against Good Care as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the parties to the Settlement Agreement, in any arbitration proceeding or other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Settlement Agreement.

56.     The Court hereby approves Wittels Law, P.C. as Class Counsel for purposes of the settlement. The Court hereby approves Plaintiff Iskander Rasulev as Class Representative.

57.     Should the Effective Date not occur as set forth in the Settlement Agreement and herein, or if the settlement is terminated for any reason whatsoever, this Order shall be null and void and of no further force and effect, and the parties shall be restored to their respective positions prior to the execution of the Settlement Agreement. Upon such nullification, neither this Order nor the Settlement Agreement shall be used or referred to for any purpose in this action or in any other proceeding, the Settlement Agreement and all negotiations relating thereto shall be inadmissible, and all Orders issued in furtherance of or pursuant to this Settlement shall be vacated.

It is so ORDERED this _28_ day of _July_____, 2017.

/s/ Cheryl L. Pollak

Honorable Cheryl L. Pollak, US MJ